BROWN v. ROOFERS & WATERPROOF-ERS UNION, LOCAL NO. 40 et al.

No. 29014.

United States District Court
N. D. California, S. D.

Sept. 1, 1949.

Robert N. Denham, General Counsel, David P. Findling, Associate General Counsel, Winthrop A. Johns, Assistant General Counsel, James F. Foley, Attorney, David Karasick, Attorney, National Labor Relations Board, Washington, D. C., for petitioner.

P. H. McCarthy, Jr., San Francisco, California, for respondents.

ERSKINE, District Judge.

The petitioner on behalf of the National Labor Relations Board, hereinafter called the "Board", seeks by these proceedings injunctive relief pursuant to Section 10(*l*) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(*l*), pending the final adjudication of the charges filed with the Board against the respondents. The charges allege that respondent Local No. 40 and respondent Building and Construction Trades Council of San Mateo County have engaged in and are engaging in conduct in violation of Section 8(b) (4) (D) of the Act, 29 U.S.C.A. § 158(b) (4) (D), by inducing the employees of one Dan Goodwin, doing business as Dan Goodwin Co. (hereinafter called "Goodwin"), and Henry Doelger, Inc., a corporation (hereinafter called "Doelger") to engage in a strike or concerted refusal in the course of their employment to transport or otherwise handle the work on any goods, articles or materials or commodities, or perform any services for their employers, for the purpose of forcing or requiring said employers to assign the work of installing on houses a certain type of composition shingles to members of the respondent Local No. 40 (hereinafter referred to as "roofers"), rather than to employees of said employers who are now members of the Carpenters' Union.

Petitioner after investigating the charges states that he believes them to be true, and that a complaint of the Board based thereon should issue against the respondents pursuant to Section 10(b) of the Act.

At the hearing on the Rule to Show Cause why a temporary injunction should not issue, evidence was introduced, both oral and documentary, by both the petitioner and respondents. The cause was then argued by counsel for both parties, and submitted to this Court for decision.

The facts of this case are somewhat similar to the facts of the case of Lebaron v. Los Angeles Building & Construction Trades Council, decided by Judge Yankwich, D.C.S.D.Cal.1949, 84 F.Supp. 629; in which many of the propositions of law invoked by the petitioner and respondents in this proceeding are discussed. The opinion of Judge Yankwich is well-reasoned and logical, and this Court will follow it in the disposal of this proceeding.

As pointed out in Judge Yankwich's opinion, the question now before this Court is to determine whether a temporary injunction should issue pending the final adjudication of the charges filed with the Board against the respondents herein. As there pointed out, in order that such an injunction issue Section 10(*l*) requires that a charge of unfair labor practice be filed, and a preliminary investigation be made by the petitioner, or his representative, and that it appear that the officer, or regional attorney of the Board to whom the matter may be referred has reasonable cause to believe that the charge is true, and that if such facts are shown the District Court may in its discretion grant such injunctive relief as it deems just and

proper. In addition to this, of course, it must be shown that the particular labor dispute involved affects interstate commerce within the meaning of the Act, and that the issuance of such an injunction will best serve the public good. Considerable evidence was introduced by both respondents and petitioner relating to the question of whether or not Dan Goodwin was a contract violator. This Court is not determining that question because it deems it beside the point so far as the particular proceeding now before the Court is concerned.

It is clear in this case that a charge of unfair labor practice was filed. It also abundantly appears from the evidence that a preliminary investigation has been made. In fact an extensive hearing on these charges was held before the Hearing Examiner for the Board last month, and again before this Court where testimony was taken, many witnesses examined on behalf of petitioner and respondents, and documentary evidence produced by both parties. These hearings disclose that not only has a preliminary investigation been made, but that such investigation was very thorough. Accordingly what is necessary for this Court to determine is (1) whether or not the petitioner had reasonable cause to believe the charges are true, and respondents have engaged in conduct in violation of Section 8(b) subsection (4) (D) of the Act, and (2) whether such conduct, if so engaged in, has affected or if continued will affect commerce within the meaning of Section 2 subsections (6) and (7) of the Act, 29 U.S.C.A. § 152(6, 7).

I will first discuss the question whether or not the facts disclose that the petitioner had such reasonable cause to believe, and thereafter the question relating to commerce.

It is clear from the evidence that such reasonable cause exists in this case. It is quite apparent that the underlying basis of the dispute with Goodwin, and of the controversies existing between the parties was the question whether or not application of composition shingles was solely the work of the members of respondent Local No. 40, and was not to be done by members of the Carpenters' or Shinglers' Unions. This is indicated by the fact, among others, that in the document dated September 20, 1948, (Petitioner's Exhibit 1) the dispute then existing is referred to and considered as a jurisdictional dispute, and not solely as a question of contract violation by Goodwin.

Respondents claim this document was not binding upon the roofers because witness Moore did not have the requisite authority to sign it. But if it be assumed that be true, the document whether it be a binding agreement or not discloses that at that time the dispute was jurisdictional and not merely a controversy with Goodwin. The fact that the basis of this controversy is jurisdictional is also indicated by the circumstance (see testimony of Henry Doelger) that when Goodwin went to work on Doelger's Westlake job on April 8th or 9th, 1949, the job was picketed by respondents, and that the picketing was continued even after Goodwin was taken off the job, and until Doelger changed from composition to wood shingles. Again on July 1, 1949, Goodwin went back on the Westlake job, and commenced installing composition shingles. Shortly thereafter and immediately after the July Fourth holiday, on July 5th, the Doelger job was again picketed by respondents. At a meeting on July 8, 1949, Ryan, representing the carpenters, asked McLaughlin, representing the roofers, if Doelger discharged Goodwin, but continued the application of composition shingles by carpenters, would the respondents cease picketing the job. McLaughlin told him they would not. This McLaughlin in effect admitted. On the other hand, Ryan told Doelger that if Doelger used roofers to install composition shingles the 250 carpenters would leave the job. Ryan admits that the dispute between the carpenters and roofers respecting the installation of composition shingles has been of long standing, and that each union claims the right to this work. This is shown by the spot decisions made on various occasions respecting such disputes when they arose in various localities in this State. The foregoing, and several other considerations

and circumstances, indicate that petitioner had and has reasonable cause to believe that such a dispute exists, and that respondents are engaged and will engage in a violation of Section 8(b) subd. (4) (D) of the Act. In this respect this is all the petitioner has to show. Lebaron v. Los Angeles Building & Construction Trades Council, supra.

Accordingly it is unnecessary insofar as this particular proceeding is concerned for this Court to determine whether Goodwin was a contract violator.

Respondent Building and Construction Trades Council contends in effect that it is not involved in this particular controversy and dispute between the carpenters and roofers. This contention is not supported by the evidence. The witness Seafuse, business manager of that Council, testified that it included all crafts, including the roofers, except the carpenters. The evidence indicates that he was present and participated in the meeting of September 20, 1948, which, as I have heretofore pointed out, involved the said dispute. He admitted that that Council sanctioned many of the strikes on the jobs which were picketed because of the dispute as to whether or not carpenters or roofers should be employed in applying composition shingles thereon. In the opinion of this Court the evidence is sufficient to indicate the petitioner had reasonable cause to believe the respondent Council was acting with respondent Local No. 40 in picketing the jobs where roofers were not used in the application of composition shingles.

Respondents contend that since there is some evidence to the effect that Goodwin joined with respondent Local No. 40 in requesting a decision of this dispute of one John T. Dunlap, Chairman of the National Joint Board for the settlement of Jurisdictional Disputes, that therefore, neither the Board, represented by petitioner, nor this Court have any jurisdiction of the dispute. This claim is contrary to the decision in the case of International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers v. International Union of United Brewery, Flour, Cereal & Soft Drink Workers, 9 Cir., 106 F.2d 871, 875. It also might be noted that there is no such limitation to the jurisdiction of this Court provided by Section 10(l) of the Act.

I will now refer to the question whether or not the evidence shows that the dispute effects interstate commerce within the meaning of the Act. Respondents contend that the labor practices involved and the ensuing labor dispute do not affect commerce within the terms of the statute and the constitutional limitations of Congressional power.

Respondents argue that to apply the Act to this case would be unconstitutional in that it would be an attempt to extend the commerce power of the Federal Government into an area of purely local activity.

It is well settled that in the exercise of its constitutional authority, Congress may regulate not only commerce itself, but matters which affect, interrupt, or stifle interstate commerce, including activities which in isolation might be deemed to be local, yet which in the course of the interlacings of business across state lines, adversely affect interstate commerce. United Brotherhood of Carpenters and Joiners of America v. Sperry, 10 Cir., 1948, 170 F.2d 863.

The question whether or not particular practices affect interstate commerce in a harmful manner is not to be determined solely by the quantitive affect of the activities immediately involved. Polish National Alliance v. N.L.R.B., 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509. Moreover, it is the effect which a particular activity in an individual case might have when multiplied into a general practice that is controlling. One small stoppage might not have an immediately perceptible effect upon the flow of the whole stream of commerce, but many small stoppages will have that effect. The power to regulate is not lost because of the small size of an individual contribution. Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122.

Nor is it the possible reduction in the flow of manufactured goods or raw

materials outward from the area of dispute that alone is significant, although that is admittedly the usual case. A substantial reduction in the flow in interstate commerce of raw materials for use by a manufacturer, or processer, in the conduct of its business has been held to constitute an invalid burden on interstate commerce. United Brotherhood of Carpenters and Joiners of America v. Sperry, supra; Shore v. Building & Construction Trades Council, 3 Cir., 173 F.2d 678; Lebaron v. Los Angeles Building & Construction Trades Council, D.C.S.D. Cal. 1949, 84 F.Supp. 629.

On behalf of the National Labor Relations Board there was evidence here produced to the effect that a substantial percentage of the materials already used or to be purchased by the contractors and sub-contractors involved in the labor dispute had their source outside the State of California. The evidence introduced by petitioner which was not contradicted by any evidence of respondents showed that a considerable portion of the articles used by Goodwin in his work as a subcontractor on the jobs involved and by Doelger on the Westlake project both by volume and cost were produced out of the State.

All of this argument adds up to the conclusion that this labor dispute "affects commerce". While recognizing that the applicability of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq. to the construction industry and the building trades unions has not as yet been specifically determined by the Supreme Court, in view of the evidence and the general principles noted, this Court will follow the previously decided cases in the lower Federal courts and hold that the activities involved herein constitute an undue burden on interstate commerce, and that the relevant provisions of the Labor Management Relations Act are applicable. Shore v. Building & Construction Trades Council, supra; Lebaron v. Los Angeles Building & Construction Trades Council, supra.

With regard to the cross-complaint of respondents for injunctive relief from the actions of the N.L.R.B. in proceeding against respondent under Sections 10(k) and 10(*l*) of the Labor Management Relations Act of 1947, it is the opinion of this Court that said cross-complaint does not contain any substantial basis for denying the injunctive relief requested by the petitioner on behalf of the N.L.R.B.

As a first cause of action in the cross-complaint it is alleged that Section 10(k) and the provisions of 10(*l*) insofar as they refer to a charge under Section 8(b) (4) (D), constitute an unconstitutional delegation of legislative power to the N.L.R.B. Respondents (cross petitioners) allege that no adequate standard has been provided for determining the jurisdiction of the N.L.R.B. Such contention cannot be upheld. The limits of jurisdiction of the Board are sufficiently defined in the Act, particularly in Section 10(a): "The Board is empowered * * * to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce." and in Section 2(7): "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." The fact that, under a delegation of authority to an administrative officer, there is a zone for the exercise of his discretion does not make the delegation unconstitutional, where Congress has prescribed the general standard and has left to him the determination of the precise situation to which the statute will be applied and the weight to be accorded the various statutory criteria on given facts. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892.

As a second cause of action in the cross-complaint it is alleged that the respondents have been denied due process of law in that they have been unable to obtain either a union shop authorization or a certification election from the National Labor Relations Board, presumably because of the administrative difficulties involved, stemming from the inherent nature of the construction industry and the unions concerned. Respondents, therefore, claim that said Act is arbitrary, capricious, and un-

equal in its application in that it denies to them certain benefits which it grants to other labor organizations.

■ Respondents claim that the right of representation is a property right entitled to protection. Texas & N. O. R. Co. v. Brotherhood of Ry. & SS. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. However relevant such a concept might be in other situations, it is not controlling here. Respondents are not excused from the restrictive provisions of the Labor Management Relations Act merely because some other provisions which unions consider to be beneficial have not as yet been made applicable to them. There is no evidence to show that the respondents have exhausted their administrative remedies to secure these claimed benefits. If it can be shown that all statutory procedures have been followed for obtaining the said certification procedure, and that the Board, in its official capacity has refused to act, then will be the proper time for the respondents to come into court in an action to secure the desired relief.

So far as this proceeding is concerned, the situation in which respondents find themselves is merely a factor addressed to the equitable discretion of the Court. It is the opinion of this Court that such circumstances alone are not sufficient to outweigh the policy inherent in the statutory provisions invoked by the petitioner in its plea for injunctive relief.

■ In conjunction with their cross-complaint for an injunction, the respondents have requested that a three judge court be convened under authority of Section 2282 of Title 28 U.S.C.A. Such a special proceeding is inapplicable in the present case. It is well settled that a request for a three judge court need not be granted unless a substantial claim of unconstitutionality is presented in the complaint. California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323; Harvey v. Early, 4 Cir., 160 F.2d 836; Rok v. Legg, D.C., 27 F.Supp. 243.

■ It is the duty of the district judge to whom the request is addressed to ascertain whether such a substantial federal question has been presented. The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of the Supreme Court. California Water Service Co. v. Redding, supra.

■ With regard to the specific question involved here, the Supreme Court has ruled that a suit challenging the validity of regulations and administrative action under a statute raises no substantial question of constitutional validity as to the statute itself. It does not appear to have been the intention of Congress that the statute should apply when administrative action and not the Act of Congress is assailed. Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189.

■ The remaining point to be disposed of is whether or not the public good will be served by the issuance of an injunction in this matter. The respondents claim that they withdrew the pickets from the Doelger Westlake job on July 18th or 19th, which was a day or two before this proceeding was commenced. This is true, but it would be unrealistic for me to assume that such action was not actuated in part of their anticipation of the commencement of this proceeding. They had kept that job picketed from July 5th to July 18th or 19th during part of the proceedings before the Trial Examiner of the Board. They did this because about six carpenters were being used by Doelger to put on composition shingles instead of six roofers. Ryan had told Doelger that if he used roofers to do this work the 250 carpenters working on the job would be taken off. McLaughlin admits that he had said that even if Goodwin was discharged from the job it would remain picketed while carpenters installed composition shingles. As soon as the job was picketed on July 5th, Doelger was unable to get the requisite material to keep the work going because of the refusal of the truckmen and teamsters and others who transported the material to the job to cross the picket line. On July 13th it was necessary to cease the work on the entire project, and let

400 to 500 men go. Thus because 6 carpenters were employed instead of six roofers a large housing construction project, which the community needs, is shut down and 400 to 500 men are put out of work. There is no reason to believe that this situation will not again occur if the relief sought in these proceedings is not given. The history of several other jobs shows that the respondents have not hesitated to picket a job if they thought roofers should do the work carpenters were doing. The public good will be served if this threat to the progress of this work is removed. It will not be served if the relief requested is not granted. For the foregoing reasons it is the judgment and order of this Court that the temporary injunction requested by the petitioner be granted.