Gerald A. BROWN, Regional Director of the Twentieth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

DEPARTMENT & SPECIALTY STORE EMPLOYEES UNION, LOCAL 1265, R.C.I.A., AFL-CIO, Respondent.

Civ. No. 39139.

United States District Court
N. D. California, S. D.

June 8, 1960.

**620**

Louis S. Penfield, Regional Atty., Region 20, N.L.R.B., San Francisco, Cal., for plaintiff.

Carroll, Davis, Burdick & McDonough, San Francisco, Cal., for defendant.

BURKE, District Judge.

This proceeding is before the Court on a petition filed by the Regional Director of the Twentieth Region of the National Labor Relations Board (herein called the Board), pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (61 Stat. 149; 73 Stat. 544; 29 U.S.C.A. § 160(*l*); herein called the Act), for a temporary injunction pending the final disposition of the matter herein involved now pending before the Board on a charge filed by Oakland G. R. Kinney Co., Inc. (herein called Kinney), alleging that respondent has engaged in and is engaging in, an unfair labor practice within the meaning of Section 8(b) (7) (B) of the Act, which section proscribes certain recognition and organizational picketing.

The petition herein is predicated on petitioner's conclusion that there is reasonable cause to believe respondent has engaged in the unfair labor practice charged and that a complaint of the Board based on the charge should issue.[1] The foregoing conclusion is based on the following evidence:

Kinney, a California corporation, is engaged at Oakland, California, in the sale of shoes at retail. Kinney's retail store is one of a nation-wide chain of over 500 retail shoe stores, owned, operated, supervised, and controlled by the parent corporation G. R. Kinney Corporation, of New York, New York, as a single integrated enterprise, and doing an annual gross volume of business in excess of $10,000,000. During the past year, Kinney received at its Oakland store, merchandise for resale valued at in excess of $50,000 which was shipped to it directly from sources outside the State of California. Respondent Department & Specialty Store Employees' Union, Local 1265, R.C.I.A., AFL-CIO (herein called Local 1265), a labor organization,[2] at all times material herein has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee-members.[3]

The substance of the charged unfair labor practice is that Local 1265 is picketing Kinney with an object of forcing or requiring Kinney to recognize or bargain with Local 1265 as the representative of Kinney's employees, or forcing or requiring Kinney's employees to accept or select Local 1265 as their collective bargaining representative, notwithstanding Local 1265 is not currently certified as the bargaining representative of the employees and a valid election has been conducted by the Board within the preceding 12 months at which the employees voted against being represented by Local 1265.

On several occasions prior to February 5, 1960, Local 1265's representatives visited Kinney's Oakland store and told the management they wanted to urge Kinney's employees to join the union. On each occasion, the management replied it was against company policy to permit the union to address the employees on the store premises on company time.

Following its efforts to solicit union membership of the employees on the store premises during working hours, Local

---

1. Having reached such conclusion, petitioner is required by Section 10(*l*) of the Act to petition the Court for a temporary injunction against a continuation of the unfair labor practice.

2. Within the meaning of Sections 2(5), 8(b) (7) and 10(*l*) of the Act.

3. The alleged unfair labor practice occurred within this judicial district. The Court has jurisdiction in the instant matter. See Section 10(*l*) of the Act, infra, p. 31.

1265 on February 4, as a prelude to its picketing, sent Kinney a letter stating that it intended to engage in an "advertising campaign" to inform the public that Kinney's store did not operate under fair union conditions; that its "exclusive purpose" was to persuade the public not to patronize Kinney and to urge them to shop in retail stores where Local 1265's members were employed. The letter continued:

"We do not claim *at this time* to represent a majority of the employees of your store, nor is it any part of the purpose of our advertising campaign to secure a union contract covering these employees. In fact, our union will refuse to enter into any such contract *until and unless a majority of your employees at your store voluntarily without any coercion of any kind designate the union as their collective bargaining representative.* (Emphasis supplied.)

Once the picketing commenced the following day, the pickets distributed leaflets to customers and others at the store entrances captioned "A Message to the Public". The leaflets stated that the employees of Kinney's store "do not enjoy Union wages, hours and other working conditions, nor do they have the advantage of the many other benefits of Union membership, such as union-negotiated medical and hospital benefits and the like". The leaflet urged the public not to patronize Kinney's store, stating that "Your patronage of this store breaks down these fair wages and working conditions which prevail in Union stores and threatens the jobs of our members at those stores." The pickets carried placards with the legend: "This Store Does Not Operate Under AFL-CIO Union Conditions. Please Do Not Patronize. Department & Specialty Store Employees' Union, Local 1265."

On April 18, 1960, upon a representation petition filed by Kinney, pursuant to Sections 8(b) (7) (C) and 9(c) of the Act, the Board conducted an election by secret ballot among the employees of Kinney in an appropriate unit, to determine whether they wished to be represented by Local 1265 for purposes of collective bargaining. At said election, Kinney's said employees voted unanimously against being represented by Local 1265. No objections were filed to the conduct of said election [4] and on April 29, 1960, the Board issued its Certification of Results of Election, certifying that a majority of the votes had been cast against representation by Local 1265 and that Local 1265 was not the collective bargaining representative of Kinney's employees.

Notwithstanding the election and the results thereof Local 1265 has continued without interruption its picketing of Kinney's retail shoe store and distribution of leaflets, at the entrances to Kinney's premises. Local 1265 is not currently certified as the representative of these employees and no charge has been filed with the Board alleging that Kinney has unlawfully recognized or assisted any labor organization.

The unfair labor practice with which Local 1265 is charged, if shown to exist, has interrupted and tends to impede and disrupt the business of Kinney and its suppliers of shoes and related products. The belief that the unfair labor practice alleged herein affects commerce within the meaning of the Act is reasonable.[5]

4. Section 102.69 of the Board's Rules and Regulations (29 F.R. 102.69), provides for the filing of such objections and the procedure with respect thereto.

5. Capital Service v. N. L. R. B., 9 Cir., 204 F.2d 848, 851, affirmed 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887; Katz (Lee's Dept. Store) v. N. L. R. B., 9 Cir., 196 F.2d 411, 413; N. L. R. B. v. Townsend, 9 Cir., 185 F.2d 378, 382; Brown v. Roofers, D.C.N.D.Cal., 86 F.Supp. 50, 54–55; N. L. R. B. v. Fainblatt, 306 U.S. 601, 606, 59 S.Ct. 668, 83 L.Ed. 1014; 307 U.S. 609, 59 S.Ct. 668, 83 L.Ed. 1014; N. L. R. B. v. Denver Building & Const. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; Polish Nat'l Alliance of U. S. of North America v. N. L. R. B., 322 U.S. 643, 647, 64 S.Ct. 1196, 88 L.Ed. 1509; Santa

The Board contends that an object of the picketing has been and is, to force or require Kinney to recognize or bargain with Local 1265 as the representative of Kinney's said employees, or to force or require these employees to accept or select it as their bargaining representative.

The charges that Local 1265's conduct violates the Act are predicated upon Section 8(b) (7) (B), which provides:

"Sec. 8(b) It shall be an unfair practice for a labor organization or its agents—

\* \* \* \* \* \*

"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

\* \* \* \* \* \*

"(B) where within the preceding twelve months a valid election under section 9(c) of this Act has been conducted, \* \* \*."

However, Section 8(b) (7) (C) provides:

"(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c) (1) or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof; Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services."

Respondent Local 1265 contends, inter alia, that the election of March 14, 1960 was conducted by the Board "without affording respondent a full and fair hearing and an opportunity to present evidence and to cross-examine witnesses in order to ascertain any single 'reasonable cause' for such action pursuant to Sections 10(b) (c) and (l) of the Act." This election is described as a device designed to evade the provisions of Section 8(b) (7) (C) and to allow the Board to take action under (7) (C). In an earlier action this District Court decided that jurisdiction to pass upon the merits of respondent's complaint was lacking at the time the matter was presented (Department & Specialty Store Employees' Union, Local 1265 v. Gerald A. Brown, D.C., 187 F.Supp. 865). Under different circumstances the question might *now* be considered but in light of the evidence adduced at the hearing in this matter such consideration would seem to be an unnecessary attempt to anticipate the result of pending appellate review. Whether or not the pre-election activities of respondent's representatives were organizational in nature is regarded as immaterial and for the purpose of this decision alone the court will proceed upon the premise that the election was a proper exercise of discretion by the Board. The immediate question is

Cruz Fruit Packing Co. v. N. L. R. B., 303 U.S. 453, 467, 58 S.Ct. 656, 82 L.Ed. 954; Siemons Mailing Service, 122 N.L.

R.B. 81; Carolina Supplies & Cement Co., 122 N.L.R.B. 88; N.L.R.B. 23rd Annual Report 1958, p. 8.

whether there is reasonable cause to believe that *post*-election picketing should be so described. The answer will, of course, depend upon evaluation of all evidence offered in this case, with proper consideration given to the time at which events may have occurred.

■ Petitioner relies upon pre-picketing contact between representatives of the respondent union and managerial personnel of Kinney as evidence which establishes reasonable cause for a belief that "an object" of *present* picketing activity is to force or require Kinney "to recognize or bargain with a labor organization as the representative of his (Kinney) employees', or to force or require "the employees of employer (Kinney) to accept or select such labor organization as their collective bargaining representative". If such "an object" has been established the picketing is a violation of 8(b) (7) (B) and reasonable cause for such conclusion is an appropriate basis for allowing the injunctive relief requested.

Petitioner argues that the actions of union representatives before picketing commenced can be construed only as reflecting an intent, purpose and desire to organize the Kinney Store and failure to attribute such intent and purpose to the picketing which started on February 5, 1960, and, more specifically, to the picketing which has continued since the election on April 18, 1960 would be an unrealistic rejection of the obvious. The letter of February 4, 1960 from respondent to Kinney disclaiming recognition as a purpose of the picketing about to commence is regarded by the Board as a self-serving statement intended to conceal real object and purpose. Distribution of the leaflets is placed in the same category with regard to object and purpose. Possibility of change in union intent upon realization that hopes of successful organizational efforts were ill founded is also disposed of as naive.

Respondent admits that initial contacts between its representatives and agents of Kinney were accompanied by a desire to establish prevailing wages,

hours and working conditions in the Kinney Store under union auspices. The immediate question is whether such contacts are of sufficient evidentiary weight as to taint future action which is equivocal in nature and require finding of reasonable cause to believe that the action is intended to accomplish an unlawful purpose contemplated by 8(b) (7) (B). In this regard the court should not allow the ultimate purpose of any union to organize all unorganized employees in a particular industry where it functions to be confused with immediate objects specifically proscribed by Congress. In Getreu v. Bartenders and Hotel and Restaurant Employees Union, Local 58, D.C.N.D.Ind.1960, 181 F.Supp. 738, 741, the Court recognized the problem with this language;

"It is difficult, if not impossible, to imagine any kind of informational picketing pertaining to an employer's failure or refusal to employ union members or to have a collective bargaining agreement where another object of such picketing would not be *ultimate* union recognition or bargaining." (Emphasis added.)

It is therefore apparent that picketing having an announced purpose of "truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization * * *", 8(b) (7) (C), must be considered without giving undue emphasis to the ultimate object of union recognition.

■ Petitioner accepts the proposition that the picketing activity for which respondent is responsible does not, superficially at least, violate the Act. Both parties agree that informational or advertising picketing, absent unlawful objective, is an exercise of right which remain unaffected by the Act. Thus, the results of the picketing, regardless of how it may intrude upon the economic well being of Kinney, are not the test of illegality in the present situation.

The evidence indicates that the picketing under consideration has at no time

interfered in any way with pick up, delivery or transportation of goods, nor has it induced any individual employed by persons other than Kinney to refuse to perform services for Kinney. Labor is well organized in Alameda County and there is little doubt that such results could have been accomplished, at least during the period between February 5, 1960 and April 14, 1960, had respondent union so desired. Failure of the union to adopt practices more likely to produce recognition by Kinney and its employees is more consistent with the "object" of "advising the public" than the proscribed objects of 8(b) (7). If the actions of the union from February 5th to April 14th can be described as organizational in nature and purpose they must also be described as halfhearted efforts in that direction.

If the picketing itself is rejected as a basis for arriving at a decision that there is reasonable cause for belief that "an object" thereof was one contemplated by 8(b) (7) we can look only to visits by union representatives to the Kinney Store as a possible source of such opinion. These visits produced no more than contact with Kinney *management* personnel followed by refusal to allow union representatives an opportunity to influence the unorganized employees on store premises during working hours. There is no question as to the right of Kinney management in this regard, but there can be no question as to the right of the union to terminate organizational activity when confronted by what it may have deemed unfavorable conditions. There is conflict in the testimony as to whether union representatives said the Kinney refusal would result in "trouble". The word is equivocal in meaning and, if used, could have contemplated the results of informational picketing or organizational picketing.

Except by leaflets intended for the general public, the Union made neither direct nor indirect contact with Kinney employees before or after its last meeting with Kinney management but the Board regards the requests made to Kinney as continuing evidence of intent and controlling on the issue of "reasonable cause". To so hold would in effect be a determination that whenever union representatives are so indiscreet as to provide any evidence of its ultimate purpose prior to picketing, its rights under 8(b) (7) (C) will be lost for an indefinite period of time. Preservation of those rights would require a union to avoid almost all preliminary contact with an employer and commence informational picketing without notice. In this regard it is admitted by the Board that had the union arbitrarily stationed pickets in front of Kinney premises in such fashion the union's contention that its present activity is intended only to inform the public as to the non-union status of the store would be invulnerable.

Is it reasonable to assume that the Congress intended to encourage the adoption of such tactics? If so, the employer and his employees are to be deprived of all opportunity to consider the merit or lack of merit to be found in Union affiliation or contract in an atmosphere of relative peace and quiet. To attribute such legislative intent to provisions of 8(b) (7) (B) would seem unreasonable. If the words "were an object thereof" are to be construed as including the ultimate object of organization, *all* informational picketing designed to discourage patronage of non-union stores *must* come within the scope of that language. A more reasonable construction would require that an unlawful object be so demonstrated and connected with demands made by the Union during picketing as to provide an acceptable basis for the conclusion that such activities were, in fact, designed to accomplish the proscribed purpose. This court can find no evidence of demands, unlawful or otherwise, which can be fairly identified with the picketing which gives rise to this action. A finding that "reasonable cause" for belief that such purpose is present must therefor be a conclusion predicated upon conjecture, speculation and distrust of that quality of honesty which should be presumed to exist in union organiza-

tions to the same extent that it is presumed to exist in the individuals who compose it. This court can reach no such conclusion.

Under these circumstances should an injunction pending a hearing before the Board be issued? It is believed that where fundamental rights of a union and non-union employers are involved, injunctive relief should be applied with caution. In this case the evidence of unfair labor practice is neither clear nor convincing and appears to fall short of a standard of "reasonable cause". An injunction would therefore be a reckless intrusion upon a situation which has not as yet been fully considered by the administrative agency responsible for decision in that regard. The petition for injunction under Section 10(*l*) of the National Labor Relations Act, as amended, is denied and findings deemed necessary to supplement this memorandum opinion will be submitted pursuant to the Rule.