William J. CAVERS, Acting Regional Director of the Thirteenth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

TEAMSTERS "GENERAL" LOCAL NO. 200, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.

No. 60-C-121.

United States District Court
E. D. Wisconsin.

Aug. 18, 1960.

Joseph I. Nachman and Eugene R. Jackman, National Labor Relations Board, Washington, D. C., for petitioner.

David Uelmen, Padway, Goldberg & Previant, Milwaukee, Wis., for Bachman Furniture Co.

William J. Bachman, Milwaukee, Wis., for respondent.

TEHAN, Chief Judge.

The petitioner, William J. Cavers, Acting Regional Director of the Thirteenth Region of the National Labor Relations Board (herein called the Board), filed a petition for a temporary injunction pursuant to § 10(*l*) of the National Labor Relations Act, as amended (herein called the Act), 29 U.S.C.A. § 160(*l*), on July 20, 1960, alleging that there is reasonable cause to believe that the respondent, Teamsters "General" Local No. 200, International Brotherhood of Team-

sters, Chauffeurs, Warehousemen and Helpers of America (herein called Local 200) is violating § 8(b) (7) (B) of the Act, 29 U.S.C.A. § 158(b) (7) (B). An answer to the petition was filed by Local 200 on July 26, 1960. On July 27, 1960, a hearing was held on the issues raised by said petition and answer, at which hearing all facts were stipulated. An exchange of briefs was completed on August 4, 1960. The court has considered the entire record and makes the following

### Findings of Fact.

1. Petitioner is Acting Regional Director of the Thirteenth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about July 1, 1960, Bachman Furniture Co. (herein called Bachman) pursuant to the provisions of the Act filed a charge with the Board alleging that Local 200 has engaged in and is engaging in unfair labor practices within the meaning of § 8(b) (7) (B) of the Act.

3. The aforesaid charge was referred to petitioner as Acting Regional Director of the Thirteenth Region of the Board.

4. Respondent, Local 200, an unincorporated association, is an organization existing for the purpose of representing employees for collective bargaining purposes, and at all times material hereto has been engaged within this district in transacting business and in promoting and protecting the interests of its employee members.

5. Bachman, a partnership, is engaged at Milwaukee, Wisconsin, in the sale and distribution of furniture and appliances at retail. It operates a retail store and a warehouse located several miles apart. In the operation of its business, Bachman has a gross annual volume of sales in excess of $500,000, and annually purchases merchandise and supplies valued at in excess of $50,000, which are shipped to it from points outside the State of Wisconsin.

6. Local 200 is not currently certified as the representative of any of Bachman's employees.

7. On March 24, 1960, Local 200 demanded that Bachman bargain with and recognize it as the representative of truck drivers, helpers and warehousemen employed by Bachman, and on March 30, 1960 a petition for an election was filed by Local 200 with the Board. A consent election agreement was executed by Bachman and Local 200 on April 8, 1960.

8. On April 15, 1960, pursuant to the provisions of § 9(c) of the Act, 29 U.S.C.A. § 159(c), the Board conducted an election by secret ballot among truck drivers, helpers and warehousemen employed by Bachman, in which election the name of Local 200 appeared on the ballot. At the election, two votes were cast for representation by Local 200 and three against. Three additional votes were challenged.

9. No charge has been filed under § 8 (a) (2) of the Act alleging that Bachman has unlawfully recognized or assisted any labor organization.

10. On April 20, 1960, Local 200 filed objections to the election of April 15, 1960, on the grounds that the employer, Bachman, held private interviews with four of the seven eligible voters subsequent to April 8, 1960, the date of the consent election agreement, during which Bachman expressed opposition to the Union and promised the employees a 30 cents per hour wage increase if they voted against the Union, thereby interfering with the employees' right to select a bargaining agent of their choice. That same day, Local 200 filed an unfair labor practice charge against Bachman, charging that Bachman interfered with, restrained and coerced its employees in the exercise of their rights protected by § 7 of the Act, 29 U.S.C.A. § 157, by promising them, during individual interviews, a 30 cents per hour wage increase if they voted against the Union, in violation of § 8(a) (1) of the Act. Both the objections and the unfair labor practice charge bear the date of April 19, 1960.

11. The Regional Director's Report on challenges and Objections was filed on June 1, 1960, overruling the Objections 'because, as he found, any conduct of Bachman complained of by Local 200 occurred prior to the execution of the Consent Agreement on April 8, 1960. Local 200 agrees that it is unable to prove any misconduct on the part of Bachman subsequent to that date, and that under the rules of the Board, conduct of Bachman occurring prior to that date is no ground for upsetting the election.

12. In the Report of June 1, 1960, the Regional Director overruled challenges to two of the three challenged votes and sustained the challenge to the third. The Revised Tally of Ballots shows three votes cast for representation by Local 200 and four against. Local 200 concedes the validity of the election.

13. On June 1, 1960, the same date that the Regional Director's Report was filed, the unfair labor practice charge filed by Local 200 against Bachman on April 20, 1960 was settled, Bachman agreeing to post a notice stating that it would not interrogate employees relative to union activities, affiliations or sympathies nor interfere with employees in the exercise of their rights to self-organization. This settlement agreement was approved on June 3, 1960, and Bachman posted the agreed notices on June 9, 1960.

14. On June 13, 1960, a certification of results of election was filed stating that a majority of the valid ballots had been cast against representation by Local 200.

15. Since on or about June 28, 1960, Local 200 has picketed Bachman. The pickets carry placards which read on one side, "Bachman's admit unfair labor practices," and on the other side, "unfair labor practices violate federal law." It admits that, unless enjoined, it will continue this picketing.

16. The conduct on the part of Bachman of which the picket signs purport to complain is the same conduct set forth as an unfair labor practice in the charge filed by Local 200 with the Board on April 20, 1960 and set forth in the Ob-

jections to Election filed by Local 200 on April 20, 1960. Local 200 made no effort to inform the public in general or Bachman's customers of this charge between the time when it first learned of this conduct, which was on April 19, 1960 or before, and the time when the picketing was commenced on or about June 28, 1960. In that interim it did, however, continue its attempt to gain recognition by pressing its objections to the election.

17. There has been no communication between representatives of Local 200 and representatives or employees of Bachman since June 13, 1960, the date on which the Certification of Results of Election was filed, with the exception of one telephone conversation between Bachman's attorney and Local 200's attorney held on July 6, 1960. On that date, Bachman's attorney informed Local 200's attorney of the picket and read to him the language contained on the picket sign. Local 200's attorney replied that the material sounded like the truth to him, discussed the unfair labor practices he felt the company had committed, and said he felt the company had tried to cover up its activities and should have known when it engaged in those activities that Local 200 would try to take retaliatory action. Neither attorney mentioned recognition.

18. There is and petitioner has reasonable cause to believe that an object of the picketing commencing on or about June 28, 1960 has been, is and continues to be to force or require Bachman to recognize and bargain with Local 200 as the representative of truck drivers, helpers and warehousemen employed by Bachman and to force or require said employees to accept or select Local 200 as their collective bargaining representative.

19. There is and petitioner has reasonable cause to believe that the acts and conduct of the respondent heretofore set forth, occurring in connection with the operations of Bachman, have a close, intimate and substantial relation to trade, traffic and commerce among the several states and tend to lead to and do lead to labor disputes burdening and obstruct-

ing commerce and the free flow of commerce.

### Discussion.

The functions and duties of the Board and the court under § 10(*l*) of the Act are now so well known that it is unnecessary to set out the text itself.

The injunctive relief contemplated in § 10(*l*), and prayed for in the petition herein, is interlocutory to the final determination of the unfair labor practice matter pending before the Board, and is limited to such time as may expire before the Board renders its final decision. The prerequisite to the granting of relief under § 10(*l*) is a finding by the court that there is reasonable cause to believe that a violation of the Act, as charged, has been committed and that injunctive relief is "just and proper." The court is not called upon to decide whether, in fact, a violation of the Act has been committed; the ultimate determination with respect to this question has been placed by Congress with the Board, subject to review by the Courts of Appeal pursuant to § 10(e) and (f) of the Act.

Congress imposed a mandatory duty upon the Board's officer or regional attorney to whom the matter is referred to seek injunctive relief in the appropriate district court upon a reasonable belief that a violation has occurred and empowered the court petitioned to grant the injunctive relief deemed "just and proper." The legislative history of the Act shows that Congress intended such power to be exercised by the court in aid of the prompt elimination of the obstructions to the free flow of commerce which the relatively slow procedures before the Board had failed to achieve.

The petitioner here alleges that he has reasonable cause to believe that the respondent has violated § 8(b) (7) (B) of the Act which provides:

"§ 8(b) It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \* \*

"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

\* \* \* \* \* \*

"(B) where within the preceding twelve months a valid election under section 9(c) of this Act has been conducted, \* \* \*."

It is conceded that Bachman's retail business establishment is being picketed by Local 200, that Local 200 is not currently certified as the representative of Bachman's employees, and that a valid election under § 9(c) of the Act has been conducted within the preceding twelve months. The parties are agreed therefore that there is only one issue before this court and that is whether the petitioner has reasonable cause to believe that the picketing now going on has as an objective forcing or requiring Bachman to recognize or bargain with Local 200 as the representative of its employees or forcing or requiring Bachman's employees to accept or select Local 200 as their collective bargaining representative.

No criteria is set forth in the statute for determining whether the Board had such "reasonable cause to believe" and the Court is remanded to the same principles employed in the exercise of its discretion for injunctive relief in similar cases. It has permissive range to exercise its discretion to grant or to deny its writ. United Brotherhood of Carpenters, etc. v. Sperry, 10 Cir., 1948, 170 F.2d 863, 869.

We have heretofore set out the findings of fact on the stipulated evidentiary matters together with the critical findings of this court that "There is and petitioner has reasonable cause to believe that an object of the picketing commencing on or about June 28, 1960 has been,

is and continues to be to force or require Bachman to recognize and bargain with Local 200 as the representative of truck drivers, helpers and warehousemen employed by Bachman and to force or require said employees to accept or select Local 200 as their collective bargaining representative." and that "There is and petitioner has reasonable cause to believe that the acts and conduct of the respondent heretofore set forth, occurring in connection with the operations of Bachman have a close, intimate and substantial relation to trade, traffic and commerce among the several states and tend to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce."

The treatment and weight we have given the facts of this case will be apparent from the comments we now make upon the respondent's argument that "there is not the slightest scintilla of evidence to support the allegation that Local 200 is seeking recognition from Bachman through picketing."

The respondent insists that the General Counsel's case consists of one single fact, a demand for recognition that was made on March 24, 1960 and which allegedly was never revoked. Stressing the fact that Bachman never replied to that demand for recognition, the respondent contends "that that demand apparently went out into the cosmos never to receive a reply and having received no reply, expired by its very nature." This contention is utterly without merit.

The evidence is overwhelmingly clear that recognition was the Union's objective on March 30, 1960 when the Union petitioned for representation election; on April 8, 1960 when it was a party to a consent election agreement; on April 15, 1960 when it participated in the election and exercised its right of making challenges. It is likewise abundantly clear that on April 20, 1960 the object of recognition was still being pressed by the Union, although at this very time the record shows that it then

had knowledge of the acts of Bachman which it now asserts is the aggravation which justifies the picketing which began two months later, on June 28, 1960.[1] It also appears that later, on June 7, 1960, a representative of the Union participated further in the recognition attempt by signing the Revised Tally of Ballots. We are satisfied that the recognition demand did not go into orbit in the cosmos but remained on a very down to earth plane, amid employees, employer and the Union.

It is basic to the respondent Union's position here that this court hold irrelevant all the acts and conduct of the Union that occurred before June 28, 1960, the date the picketing commenced. The court would then of course be limited to the consideration of these few facts, all occurring on and after June 28, 1960: (1) the wording of the signs themselves; (2) that there was no communication between Local 200 and the employees of the Bachman Furniture Company; (3) that Local 200 did not picket the warehouse which most of the employees work at or out of; and (4) that the only communication between the Union and Bachman consisted of a telephone conversation between counsel for those parties that related only to the picketing and in which no mention was made of recognition.

In his brief, counsel for the respondent sets out the two legends, "Bachman's admit unfair labor practices" and "unfair labor practices violate federal law" and asks, "What is there on the picket sign itself that indicates a recognition objective?" "Does not the picket sign itself apply only to the unfair labor practices which were committed?" It is scarcely surprising that the wordings themselves do not express recognition as an object, in the light of the fact that counsel has forthrightly volunteered, with what we interpreted as a certain pride of authorship, that he himself composed the legends on the signs. In fact it would be ungenerous to counsel and hi

---

1. On April 20, 1960, the unfair labor practice charge against Bachman was filed by Local 200.

firm, eminent and experienced specialists in the field of labor relations, to believe that, having concerned themselves with the precise wording, they would not advise Union representatives as to how they should conduct themselves once the picketing began.

■ At best this Union's post-picketing evidence is self-serving and negative in character. Our Court of Appeals for the Seventh Circuit in Madden v. International Hod Carriers', etc., Union, 1960, 277 F.2d 688, at page 692, has held such signs as self-serving declarations, and has commented upon the reaction to picket signs in general in the following language:

"It has been recognized that picketing 'may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disemminated', Bakery and Pastry Drivers and Helpers Local, etc. v. Wohl, 315 U.S. 769, 776, 62 S.Ct. 816, 820, 86 L.Ed. 1178, and 'has far more potential for inducing action or nonaction than the message the pickets convey', Building Service Employees, etc. v. Gazzam, 339 U.S. 532, 537, 70 S.Ct. 784, 787, 94 L.Ed. 1045."

■ The Board and this court are charged by the Congress with the duty of determining the intent of the party charged. Whether that party be union or employer we know of no way of determining intent or objective except through inferences to be drawn from the actions of the parties. We can form no other conclusion from the totality of the Union's acts within the relevant period of March 24, 1960 to the present but that it has had for an objective and its principal objective the recognition of the Union. All of the facts found, definitely point towards the objective of recognition and there is a total absence of any persuasive facts that there is an objective other than recognition.

In coming to this conclusion the court would like to observe that we have tried carefully to avoid what we conceive to be the extremes in this and similar cases.

One of the extremes is that pointed out by Judge Swygert in Getreu v. Bartenders and Hotel and Restaurant Employees Union, D.C., 181 F.Supp. 738, 741:

"It is difficult, if not impossible, to imagine any kind of informational picketing pertaining to an employer's failure or refusal to employ union members or to have a collective bargaining agreement where another object of such picketing would not be ultimate union recognition or bargaining."

We have not been influenced in our judgment by what is invariably the ultimate or long-term goal of every Union, to enlist all eligible workers within the Union jurisdiction. It would not only be unfair, but would make meaningless certain other sections of the statutes. The test we applied was that of an inquiry into a reasonably immediate objective of the Union, and have found that to be recognition.

On the other extreme is the position of the Union in the instant case which demands that the court accept as a verity its profession that it has changed its objective.

The respondent argues that unless the court is willing to find that Section 8(b) (7) precludes all picketing for all objectives for twelve months after a valid election the picketing in this case does not violate the law. (Respondent's emphasis.) However, it should be pointed out that we have found as a matter of fact and law that the picketing here had an objective of recognition. In this regard it might also be well to call attention to a significant portion of the history of the act.

■ The legislative history of the 1959 Amendments to the Act which became effective on November 13, 1959, makes it abundantly clear that, in enacting Section 8(b) (7) (B), Congress intended to and did further the statutory scheme for the orderly resolution of questions concerning representation, and protected the rights of employees and employers alike by outlawing all picketing

for recognition—organizational purposes for a period of twelve months following a Board conducted election.

Thus, Secretary of Labor Mitchell, testifying before the Senate Labor Committee in support of S. 748, sometimes referred to as the Administration bill, which contained a provision identical with Section 8(b) (7) (B) as ultimately adopted, stated (105 Cong.Rec. 1568, February 4, 1959):

"After the employees have indicated their rejection of union representation they should be left free for a reasonable period of time from organizational efforts by picketing.

"The total effect of these proposals in the administration bill would be to regulate picketing so that employers and their employees will not be subject to the continuous coercion of an organizational picket line."

Senator Kennedy of Massachusetts, Senate majority spokesman, who did not agree with all of the provisions of the Administration bill, nonetheless agreed that it would be advisable "to provide that for a certain period of time following a legitimate election, there could not be picketing" (105 Cong.Rec. 5959–5960, April 24, 1959).

As Senator Goldwater pointed out in supporting the Administration provision identical with Section 8(b) (7) (B) (105 Cong.Rec. 5968–5969, April 24, 1959):

"The law provides an orderly way for a union to organize any business. By the use of handbills, meetings, home visits, and so forth, the union can obtain a majority of the employees as members. It then petitions the National Labor Relations Board for an election. The election is by secret ballot, and the employer is forbidden to interfere, restrain or coerce his employees in their exercise of their choice. If the union wins the election, the employer is required by law to bargain with it. Having provided a lawful, orderly means of securing union recognition, the Government should insist that

that process, and no other, be followed."

In reporting to the Senate on the bill as agreed upon by the Senate and conferees, which contained Section 8(b) (7) (B) as ultimately enacted, Senator Kennedy stated (105 Cong.Rec. 16415, September 3, 1959):

"Subdivision (B) bars picketing for organizational purposes or union recognition for 12 months after an election in order to secure the expressed desire of the employees."

Similarly, Representatives Thompson and Udall, Members of the House Labor Committee, in commenting on the need for a ban on recognition or organizational picketing following an election, stated (105 Cong.Rec. 14203, August 11, 1959):

"When the Labor Board conducts an election, all the employees have a free opportunity to indicate their choice of bargaining representative. If they vote not to be represented by a union, their choice should be respected. For a union to picket their employer after losing an election is to attempt to coerce the employees into supporting the union against their express desire."

Senator Morse, speaking to the Conference Report, and though opposed to the Bill generally, stated (105 Cong.Rec. 16398–16399, Sept. 3, 1959):

"Suppose there has been an election, and the union has lost overwhelmingly. The day after the election is over, bingo, there is another picket line. I think both the employer and the public are entitled to some protection in such a case. It is perfectly fair to have a rule that under such circumstances a picket line cannot be stretched in that kind of labor dispute, for a reasonable period of time * * *.

\* \* \* \* \* \*

" * * * I do not believe that the day after the vote, the employer should have to wake up and see a picket line in front of his plant. * * * I think it is reasonable to

provide rules of the game, so to speak, that will give such an employer protection from having a picket line stretched before his plant, for at least a reasonable period of time."

If parties are to be judged merely by their professions independently of the totality of their actions, the goal of the Congress that there be a period of freedom from organizational picketing after a valid election will never be achieved.

We add only the last and final observation that we do not here hold that there could not be a proper instance of picketing in the twelve month period following an election. We are all familiar with examples of situations in which the right of a Union to picket could not be denied, e. g., a Union might lose a representation election, and within the ensuing twelve month period the employer might become an ally of another employer, whose employees are represented by the same Union and which employer is strike-bound by a valid economic strike. In such a case valid picketing might well be carried on by the Union at the premises of the ally even though a representation election was held during the preceding twelve months.

#### Conclusions of Law.

1. This court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(*l*) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent Local 200 is a labor organization within the meaning of Sections 2(5), 8(b) and 10(*l*) of the Act.

(b) Bachman is engaged in commerce within the meaning of Sections 2(6) and (7) of the Act, 29 U.S.C.A. § 152(6, 7).

(c) Respondent has engaged in unfair labor practices within the meaning of Section 8(b) (7), subparagraph (B), of the Act, affecting commerce within the meaning of Sections 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b), 29 U.S.C.A. § 141 (b), thereof.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission, continuation, or repetition of the acts and conduct set forth in Finding of Fact No. 15 above, acts or conduct in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.