Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 140, BEDDING, CURTAIN & DRAPERY WORKERS UNION, UNITED FURNITURE WORKERS OF AMERICA, AFL–CIO, Respondent.

United States District Court
S. D. New York.

April 23, 1962.

Jacques Schurre, N. L. R. B., New York City, for plaintiff.

Rabinowitz & Boudin, New York City, for defendant.

CROAKE, District Judge.

In this proceeding the petitioner, the Regional Director of the National Labor Relations Board, seeks a temporary injunction under Section 10(*l*) of the National Labor Relations Act, 29 U.S.C.A. § 160(*l*). The charging party in the proceeding before the N.L.R.B. is Sealy Greater New York, Inc., hereinafter referred to as "Sealy New York." The following facts appears to be undisputed:

Sealy, Inc., is a nation-wide corporation having its main offices in Chicago. This corporation owns patents for the production of mattresses and other bedding components and is the owner of the trade name "Sealy." Sealy, Inc., licenses other companies to manufacture and sell its products throughout the United States. One of these companies, Waterbury Mattress Company, hereinafter called "Waterbury," manufactures mat-

tresses under a Sealy license. Waterbury also is a stockholder in Sealy, Inc., and one of its officers and principal stockholders is also a director of Sealy, Inc. Waterbury manufactures Sealy products and sells them in various parts of Connecticut and Massachusetts. Until December of 1961, another licensee, Sealy Mattress Company of New York City, Inc., hereinafter referred to as "Sealy Brooklyn," manufactured and sold Sealy products in the Greater New York area. Sealy Brooklyn maintained and used a showroom on Lexington Avenue, near 32nd Street, in the Borough of Manhattan in New York City. Sealy Brooklyn also maintained a manufacturing plant in the Borough of Brooklyn where it had about fifty employees, some of whom had worked for the company for over thirty years. Local 140, Bedding, Curtain & Drapery Workers Union, United Furniture Workers of America, AFL-CIO, the respondent in this proceeding, hereinafter referred to as "Local 140," represents these workers and had entered into a collective bargaining agreement with the New York Bedding Manufacturers Association workers of which Sealy Brooklyn was a member. Sealy Brooklyn is also a signatory to the contract.

In December of 1961, Sealy, Inc., revoked the franchise under which Sealy Brooklyn had operated. This franchise was assumed by Waterbury through Sealy New York, another corporation wholly owned by the stockholders of Waterbury. However, under the terms of the franchise, Sealy New York would only merchandise Sealy products in the New York area. All manufacturing operations which were formerly conducted by Sealy Brooklyn were transferred to plants owned by Waterbury, located in Connecticut.

As a result of the loss of its Sealy franchise, Sealy Brooklyn discharged its employees and thereafter it employed about ten of them as it is now conducting its business under another name but is still engaged in the bedding manufacturing industry. Since their discharge, the remaining former employees [of Sealy Brooklyn] have been unable to find new employment and have commenced picketing the Lexington Avenue showroom which Sealy New York now operates.

These pickets carried signs and distributed leaflets stating that they were fired employees of the Brooklyn Sealy shop, that some of them had worked as long as thirty-eight years for the company, and that their work had been taken from them and was now being made under nonunion conditions. They further stated that they were picketing Sealy showrooms and stores to inform the public of this injustice and to appeal to them not to buy Sealy-made bedding. The leaflet, for example, concluded with the language, "Help us get our jobs back! Don't buy Sealy products! /s/ Workers of Sealy." Some of the original signs which the pickets carried were inscribed "Local 140," but early in January these signs were changed to "Workers of Sealy." On January 19, 1961 Sealy New York filed a charge with the N.L.R.B. alleging a violation of 29 U.S.C.A. § 158(b) (7), (c). In the meantime, the union also demanded arbitration as to some of the terms of the collective bargaining agreement to which reference was made. There is also pending a petition by Sealy New York and Waterbury in the New York State Supreme Court to stay this arbitration.

On February 15, 1962 the petitioner found reasonable cause to believe that an object of the picketing was to force or require Waterbury to recognize or bargain with respondent as the representative of the employees of Waterbury, and as a result the Board filed this petition for a preliminary injunction seeking to enjoin the picketing until a final determination by the N.L.R.B.

The function of this court under section 10(l) is to determine whether N. L. R. B. had reasonable cause to believe that the respondent was engaging in an unfair labor practice in violation of Title 29 U.S.C.A. § 158(b) (7), (c). See Consentino v. Carpenters District Council of St. Louis, AFL-CIO, 200 F.

Supp. 112, 116 (E.D.Mo.1961). For the reasons hereinafter set forth, this court has reached the conclusion that the request of the petitioner for a preliminary injunction pending the final disposition of the proceedings in this matter before the N.L.R.B. is unwarranted under the facts and circumstances presented at the hearing.

All picketing is not made illegal by the provisions of 29 U.S.C.A. § 158(b) (7). In order for the petitioner to prevail in this proceeding, it must be shown that there was reasonable cause to believe that the respondent is engaging in an unfair labor practice described in the Act. See Penello v. Retail Store Employees Local Union No. 692, 188 F.Supp. 192, 199 (D.C.Md.1960), aff'd 287 F.2d 509 (4th Cir. 1961). The words of the Act and the cases interpreting its provisions provided the measure of the respondent's duty in this case. Section 8(b) provides:

"It shall be an unfair labor practice for a labor organization or its agents—

" * * * (7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employee to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees: * * *

" * * * (C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c) (1) or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such units as the Board finds to be appropriate and shall certify the results thereof: Provided further, That nothing in this subparagraph (c) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services. * * * * "

This Act would make it unlawful for a labor organization such as Local 140 to engage in picketing where at least one object of the picketing is to force or require the employer, Sealy, Inc., to recognize or bargain with Local 140 as a representative of its employees or alternatively to force or require the employees of Sealy New York to accept Local 140 as their collective bargaining representative. The petitioner produced no evidence at the hearing which would warrant a finding that petitioner had reasonable cause to believe that the picketing in question came within the condemnation of this statutory language. The court is mindful that in this case it is not making an original determination but only considering whether there were reasonable grounds to support the findings made by the petitioner. However, petitioner must present evidence which when considered together supports its conclusion. During the course of the hearing, evidence presented by both parties indicated that the main object of the picketing was to bring economic pressure upon the Sealy organization to rehire the employees who had been discharged by Sealy Brooklyn. Petitioner, however, argued that an alternative purpose of picketing was the recognition of the union as the bargaining agent for the employees of Waterbury and, in sup-

port of its contentions, petitioner presented a letter which the union had written to Waterbury in which the union notified Waterbury that it was going to proceed with arbitration. The letter further claimed that Waterbury was the successor to Sealy Brooklyn, and that as such Waterbury was bound by the prior collective bargaining agreement. The court recognizes that picketing may have more than one objective and that as long as one of the objectives of the picketing come within the Act, the petitioner would be entitled to the relief requested. See McLeod v. Chefs, Cooks, Pastry Cooks and Assistants, Local 89, 280 F.2d 760 (2d Cir. 1960). However, this court is also of the view that it is not bound to accept the unsupported conclusions of either party as to the purpose of the picketing. See Cavers v. Teamsters "General" Local No. 200, 188 F.Supp. 184 (D.C. E.D.Wis.1960). Thus, the court must determine from the evidence presented whether the objective which the petitioner assigns to the picketing can be reasonably inferred when considering all the facts and circumstances of this case, and the existence of the union demand for arbitration is just one of the circumstances which must be considered. This letter does not create a presumption that the picketing is unlawful. At the hearing, the union president, Mr. Sirota, testified that the objective of the picketing was to force Sealy to rehire the discharged employees whether it be in the New York area or in some other part of the country. Mr. Sirota admitted that his union was also attempting to seek arbitration of rights which they thought existed under their contract. However, he denied that the picketing was intended to obtain recognition for his union. The petitioner presented no evidence to rebut the testimony of Mr. Sirota and, indeed, other union members who were engaged in the picketing testified to the same effect.

When these facts are viewed against the background circumstances presented here, it is difficult to understand how the petitioner construed the statutory provisions as governing this situation.

The statute declares unlawful, picketing for the purpose of recognition. In the instant case, however, the union was not attempting to represent the present employees of Sealy New York but, rather, it was trying to force Sealy New York to hire former employees of Sealy Brooklyn.

It is clear from the evidence that the nub of this labor controversy is the union's attempt to use economic pressure to force Sealy, Inc., to hire these men. Thus, it becomes necessary to draw a line between the objectives of the picketing and any incidental benefits which might accrue to the union if certain events relating to the place of reemployment come into existence. This is not the kind of case where the recognition element may be inferred due to the existence of factors which are now known to exist. The distinction between ultimate objectives and immediate or important objectives was recognized in the Penello case, where the court stated:

"It is generally conceded that the ultimate objective of almost all union activity is to require all employers to recognize a bargain with unions but it would be unfair to apply that test in such a case as this; the test should be the reasonably [important] objectives of the union." 188 F.Supp. at 201.

The circumstances here do not logically support the conclusion or even the inference that Local 140 is engaging in recognitional picketing. Indeed, it is undisputed that other employees of Sealy New York working at the Lexington Avenue showroom are salesmen and clerical employees. There is no suggestion in the record, and the petitioner does not urge that Local 140 is attempting to organize these employees. Similarly, the evidence is undisputed that Local 140 does not have jurisdiction of the area where Waterbury's manufacturing plant is located. Thus, Local 140 cannot be attempting to organize the employees of Waterbury in its factory in Connecticut. The only inference which the evidence might support is that if Sealy were to employ these

men and establish a manufacturing plant in New York, Local 140 would presumably claim jurisdiction. However, this result is based upon speculation in which this court is not inclined to indulge. It also follows as a possibility that if they obtain work in the New York area, Local 140 would become their representative without resort to picketing or any other coercive activity.

The approach adopted in the Penello case is consistent with the legislative history of this provision. It is clear from the reports and comments of the members of Congress when it was considering this law that these provisions were designed to prevent unfair organizational picketing under circumstances outlined in the statute. There is no suggestion that the statute was designed to prevent the type of picketing which these men have undertaken. See U.S.Code Cong. & Ad.News, pp. 2446, 2480-2481, 2512-2513 (1959).

When we analyze the added factor of the demand for arbitration, the result is no different. The court, of course, recognizes that the Board might very well conclude that there were overlapping objectives in the picketing and the demand for arbitration by the union. However, the demand for arbitration is based upon the theory advanced by this union that Sealy New York is the successor in interest to Sealy Brooklyn and has, therefore, assumed the liabilities of Sealy Brooklyn. Pursuant to the collective bargaining agreement, Local 140 is the certified representative of these former employees and is attempting to enforce whatever rights they may have. It is simply a question of whether Sealy New York has assumed the former obligation of Sealy Brooklyn. If it has not, these employees havve no rights which Waterbury or Sealy New York must recognize. If it has, no further recognition of Local 140 is required and the statutory language, as we interpret it, exempts picketing activities by this local as it is the certified representative of these employees pursuant to the provisions of the bargaining agreement. It

would appear that the union seeks no greater recognition by its demand for arbitration than the existing contract provides.

This court necessarily respects the administrative expertise of the petitioner in this case. However, the question of statutory interpretation presented here is not within this area. Further, the request of the petitioner for injunctive relief must be predicated upon evidence which supports its conclusions that the picketing is an unfair labor practice as defined by 29 U.S.C.A. § 158(b) (7), the authority under which this relief is sought. This it has failed to do in this proceeding.

In view of the foregoing, the court finds it unnecessary to pass upon the alternative grounds urged by the petitioner concerning the exception under § 158(b) (7), (c) dealing with the effect of such picketing. If the statute does not cover this type of picketing, the exception is irrelevant.

For the foregoing reasons, this motion must be denied.