Samuel M. KAYNARD, Acting Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 140, BEDDING, CURTAIN & DRAPERY WORKERS UNION, UNITED FURNITURE WORKERS OF AMERICA, AFL-CIO, Respondent.

United States District Court
S. D. New York.
May 11, 1962.

222

George Norman and Paul Dwyer, Washington, D. C., for petitioner.

Rabinowitz & Boudin, New York City, Leonard B. Boudin, New York City, of counsel, for respondent.

Weil, Gotshal & Manges, New York City, William J. Abelow, New York City, of counsel, for charging party.

CASHIN, District Judge.

This is a motion brought on by an order to show cause for a preliminary in-junction pursuant to Section 10(*l*) of the National Labor Relations Act, 29 U.S. C.A. § 160(*l*), pending the final disposition of the matters involved herein now before the National Labor Relations Board. A hearing was held on all the issues raised by this motion on May 2, 1962, at which time the petitioner produced several witnesses.

The petitioner is Acting Regional Director of the Second Region of the National Labor Relations Board (hereinafter called the "N.L.R.B."), an agency of the United States. The charging parties in the proceeding before the N.L.R.B. are Jacob Davis, d/b/a Jerome Furniture Co. (hereinafter called "Jerome"), Waterbury Mattress Company (hereinafter called "Waterbury") and Sealy Greater New York, Inc. (hereinafter called "Sealy New York"). They charge that respondent, a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (ii) (B) of the National Labor Relations Act, 29 U.S.C.A. § 158 (b) (4) (ii) (B).

The facts, not substantially disputed, are as follows:

Sealy, Inc. is a nation-wide corporation which owns patents for the production of mattresses and other bedding equipment and owns the trademark "Sealy". Prior to December 1961 Sealy Mattress Company of New York City Inc. (hereinafter referred to as "Sealy Brooklyn") was licensed by Sealy, Inc. to manufacture and sell its products in the Greater New York area. Respondent in this action (hereinafter called "Local 140") represented, and still represents, the employees of Sealy Brooklyn. In December 1961 Sealy, Inc. revoked Sealy Brooklyn's franchise and awarded it to Waterbury, a Connecticut corporation. Waterbury merchandises the Sealy products in the New York area through Sealy New York, a corporation wholly owned by the stockholders of Waterbury.

Upon the loss of their Sealy franchise, Sealy Brooklyn discharged about 50 of its employees represented by Local 140

and subsequently rehired about 10 of them. Since their discharge by Sealy Brooklyn, the remaining 40 employees have been unable to find new jobs and have threatened to picket and have picketed certain customers of Waterbury.

At the hearing before me held on May 2, 1962, the petitioner produced six witnesses who are all in the retail furniture business. These were Ralph Wientzer, President of Ralph Winston, Inc., a firm that does a gross annual sales volume of over $500,000; Seymour Studin, a partner of Madison Quilt and Mattress Shops, which does a gross annual sales volume of about $80,000; Samuel Korn, Secretary of Major Furniture and Upholstery, Inc., which does a gross annual sales volume in excess of $500,000; Salvatore Mancuso, whose firm does a gross annual sales volume in excess of $250,000; Alfred Leo Davis, whose firm does a gross annual sales volume of about $100,000, and Charles Fleischer. Each witness' testimony was similar. Each was visited in his place of business in December 1961 or January 1962 by members of Local 140. They were all informed that if they did not stop selling Sealy products their stores would be picketed. Some of the witnesses testified that they removed all Sealy products from their stores and were left alone. Those who continued to sell Sealy products were picketed by members of Local 140, who carried signs which stated "Sealy Mattress Co. Unfair" and "50 Sealy Mattress Workers in N. Y.C. Fired."

The function of this court under Section 10(*l*) is to determine whether the N.L.R.B. had reasonable cause to believe that Local 140 was engaging in an unfair labor practice in violation of 29 U.S.C.A. § 158(b) (4) (ii) (B). That section makes it an unfair labor practice for a labor organization or its agents "to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce", where an object thereof is—

"forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing".

From all the evidence before me I have no doubt that petitioner has reasonable cause to believe respondent has violated the above section and that a preliminary injunction should issue against the respondent.

Respondent urges many reasons for denying the petitioner's motion. First, it argues that Judge Croake's decision, McLeod, for and on behalf of National Labor Relations Board v. Local 140, Bedding, Curtain & Drapery Workers Union, United Furniture Workers of America, AFL–CIO, 207 F.Supp. 525, is the law of the case and thus bars the granting of a preliminary injunction. The 10(*l*) proceeding before Judge Croake, involved a charge under 29 U.S.C. A. § 158(b) (7) (C) which was filed on January 19, 1962, by Sealy New York. It should be noted that except for Sealy New York the charging parties in the two cases are not the same and the alleged violations are of different sections of the Act.

The alleged violation of the Act before Judge Croake involved primary picketing of Sealy New York by respondent union for a recognition or bargaining object where the respondent union did not file a petition for an election within a reasonable time not to exceed 30 days. The evidence considered by Judge Croake involved primary picketing of Sealy New York, and other primary activity by the

respondent union for a recognition object. It did not involve the issue of secondary picketing or the secondary boycott provision of the Act which is involved in the instant case and therefore has no bearing on the instant proceeding.

Respondent also argues that its activities do not constitute a threat, coercion or restraint within the meaning of Section 8(b) (4) (ii) (B) and its sole object was to persuade the public not to purchase a non-union product and that it did not attempt to force the retailers to do anything. I find absolutely no merit in either of these positions. It is abundantly clear that the respondent's object was to force the retailers to stop selling Sealy products. Each retailer was told that if he continued to sell Sealy products he would be picketed and those retailers who did continue to sell Sealy products were picketed. Those retailers who stopped selling Sealy products were left alone. Respondent's position that it was not attempting to force the retailers to do anything is absurd. It is also absurd to argue that respondent's activities do not constitute a threat, coercion or restraint within the meaning of Section 8(b) (4) (ii) (B) and respondent cites no cases in support of its position.

The facts in this case clearly show that respondent threatened, coerced and restrained the above named retailers and that *an* object of respondent was and is to force said retailers to cease using, selling, transporting or otherwise dealing in the products of Waterbury and Sealy New York. In my opinion, respondent's conduct comes squarely within the meaning of Section 8(b) (4) (ii) (B).

Respondent also contends that the proviso to Section 8(b) (4) (ii) (B) which states—

> *"Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;"

protects its present conduct, because its present conduct involves primary picketing. The reasoning appears to be that the retailers are not being picketed but only the products made by Sealy. To agree with this interpretation would be to completely nullify this entire section of the National Labor Relations Act.

Similarly, I find no merit in respondent's contention that its conduct is protected by Section 8(c) of the National Labor Relations Act and by the First Amendment to the Constitution.

The above shall constitute my Findings of Fact and Conclusions of Law.

Petitioner's motion for a preliminary injunction is hereby granted.

See order signed this date.