Ross M. MADDEN, Regional Director, etc., Petitioner-Appellee,

v.

INTERNATIONAL HOD CARRIERS', BUILDING AND COMMON LABORERS' UNION OF AMERICA, LOCAL NO. 41, AFL–CIO, Respondent-Appellant.

No. 12743.

United States Court of Appeals Seventh Circuit.

May 11, 1960.

Bernard M. Mamet, Chicago, Ill., for appellant.

Winthrop A. Johns, Asst. Gen. Counsel, National Labor Relations Board, Washington, D. C., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Jerome L. Avedon, Atty., National Labor Relations Board, Washington, D. C., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and CASTLE, Circuit Judges.

1. International Hod Carriers', Building and Common Laborers' Union of America, Lo-

CASTLE, Circuit Judge.

This is an appeal from an order of the District Court granting temporary injunctive relief against the respondent-appellant Union.[1] The order restrained picketing pending final disposition of an unfair labor practice proceeding before the National Labor Relations Board in which it was charged that the picketing violated Section 8(b) (4) (C) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (4) (C).

The order was entered following a hearing on a petition invoking the District Court's jurisdiction under Section 10(l) of the National Labor Relations Act, 29 U.S.C.A. § 160(l) and filed on behalf of the National Labor Relations Board by petitioner-appellee, Regional Director of its Thirteenth Region. The petition alleged, *inter alia,* that the Board had investigated the unfair labor practice charge and "upon the basis of the evidence disclosed as a result of such investigation, petitioner has reasonable cause to believe, and believes, that respondent has engaged in, and is engaging in, acts and conduct in violation of Section 8(b) (4) (C) of the Act".

The Union's appeal presents two main issues:

1. Whether on the evidence adduced on the hearing before it the District Court was clearly erroneous in finding and concluding that there is reasonable cause to believe that the picketing had induced and encouraged employees to engage in concerted refusals to perform services, and that an object thereof was to force or require any employer to recognize or bargain with the Union as representative of his employees although another labor organization was the representative of such employees certified by the Board, and

2. Whether the District Court erred in refusing to permit inquiry by the Union into the scope, nature

cal No. 41, AFL–CIO. Referred to herein as Union.

and extent of the Board's preliminary investigation.

█ In resolving each of these issues we must be guided by the fundamental proposition, expressly recognized in the language of Section 10(l),[2] that the parties be given opportunity to present "any *relevant* testimony",[3] and the further consideration that in a Section 10(l) adjudication it is not the function of the District Court to determine whether, in fact, an unfair labor practice has been engaged in, but only if reasonable cause exists to believe such violation occurred.

█ The injunctive relief provided for in Section 10(l) is interlocutory to a final disposition by the Board of the unfair labor practice charge. The ultimate determination on the merits as to whether a violation occurred is reserved exclusively for the Board, subject to judicial review by the Court of Appeals.

In Madden v. International Organization of Masters, Mates and Pilots of America, Inc., 7 Cir., 259 F.2d 312, 313, certiorari denied 358 U.S. 909, 79 S.Ct. 236, 3 L.Ed.2d 229 we pointed out in this connection:

"In this appeal by respondents from the order below granting an interlocutory injunction, they could not have cast their nets more widely, for they misconstrue the functions of the district judge when he is passing upon a petition for temporary relief under § 10(l). By its express terms that provision is aimed at an injunction *pendente lite i. e.*, pending the final adjudication of the Board based upon its hearings; subsequently judicial review at the Court of Appeals level comes into play. Congress has expressly authorized district courts to grant temporary injunctive relief pending administrative decision. Clearly a district judge proceeding under § 10(l), as here, looks to the statutory yardstick of 'reasonable cause' required

as the basis for the petition and he is certainly not deciding which party, petitioner or respondent, is ultimately to prevail, nor do we now. In this incipient stage the district court was asked to aid the Board by preserving the status quo until it could ascertain by hearings, whether it had statutory jurisdiction, and if unfair labor practices existed. We, on the other hand, are simply reviewing discretion exercised below in a § 10(l) setting. Douds v. Milk Drivers and Dairy Employees Union, 2 Cir., 1957, 248 F.2d 534, 537. The finding of reasonable cause is not clearly erroneous under Rule 52, Federal Rules of Civil Procedure, 28 U.S.C., and respondents by their motions admitted all facts well pleaded in Madden's petition."

And, as then Chief Judge Duffy so aptly observed in Cosentino v. United Brotherhood of Carpenters and Joiners of America, AFL-CIO, et al., 7 Cir., 265 F.2d 327, 330, 331:

"Section 10(l) expresses the determination of Congress that unfair labor practices proscribed by Section 8(b) (4) (A) gave, or tended to give, rise to such serious interruptions to commerce as to require their discontinuance, pending adjudication by the Board.

"The injunctive relief contemplated in Section 10(l) is interlocutory and is limited to such time as may expire before the Board's final disposition of the unfair labor practices charged. In order to justify such relief, there must be a finding by the District Court that there is reasonable cause to believe that a violation of the Act as charged, has been committed and that equitable relief would be just and proper. The District Court made such findings. On this appeal this Court is not called upon to decide whether in fact the charges are true."

---

2. All statutory references herein are to the National Labor Relations Act, as amended.

3. Emphasis supplied.

\* \* \* \* \* \* \*

"In equity suits a district judge has a wide discretion to issue or withhold a temporary injunction, and ordinarily an appellate court will not interfere. Federal Trade Commission v. Rhodes Pharmacal Co., 7 Cir., 191 F.2d 744. The section we are considering provides: ' \* \* the district court shall have jurisdiction to grant such injunctive relief \* \* \* as it deems just and proper, notwithstanding any other provision of law \* \* \*.' Such a grant of power by Congress to a district judge is a very broad one limited only by the exercise of sound legal discretion. Schauffler v. United Association of Journeymen, etc., 3 Cir., 218 F.2d 476, 480."

 The petition for temporary injunctive relief in the instant case was predicated on a charge filed with the Board on April 1, 1959 by George DeJong and the Calumet Contractors Association[4] alleging that the Union had and was engaged in unfair labor practices proscribed by Section 8(b) (4) (C). From the record it appears that in 1958 the Christian Building Trades Local 12, Christian Labor Association of the United States,[5] following a representation election held after it petitioned the Board under Section 9(c) of the Act, was certified by the Board as collective bargaining representative for "all journeymen and apprentices, laborers, machine operators and truck drivers" employees of members of the Association. The Union had opposed the petition of Local 12. In the fall of 1958 DeJong, a member of the Association, was awarded a contract for the erection of a church building in a residential section of Hammond, Indiana. As general contractor he retained the carpentry and labor work, but subcontracted all the other work involved. Work on the project started the last week of October, 1958. On November 3, the Union commenced picketing the construction site. The picket sign claimed, in substance, that the masonry subcontractor was not performing his work with qualified craftsmen or paying prevailing wages. The next day the names of DeJong and the Association were substituted for the masonry subcontractor. The picket sign after the change read:

### NOTICE TO PUBLIC

The work being performed by the following contractors is not being done by qualified

### BUILDING TRADES CRAFTSMEN

The prevailing rate of pay & conditions are not being met
This notice is addressed only to the general public & not to the employers or employees on the job

### GEO. DeJONG & EMPLOYER MEMBERS OF THE CALUMET CONTRACTORS ASS'N LABORS UNION #41 A.F. OF L. - C.I.O.

Work on the project was suspended and due to inclement weather commencing the latter part of November, DeJong did not attempt to resume work at the site until March 12, 1959. The Union's picketing with the sign continued thereafter. The picket also carried handbills for distribution which read:

Notice to the Public.

The sole purpose of patrolling this job site is to alert the public that the work being performed is not being done by qualified Building Trades Craftsmen. It is to inform the public that the prevailing rate of pay and conditions are not being met on this job.

This Notice Is Addressed Only to the Public. It Is Not Addressed to Any Employers or to Any Employees. There is no intent or attempt to induce or encourage employees of any employer to engage in a refusal to work, transport or otherwise handle or

---

4. Herein referred to as Association.

5. Herein referred to as Local 12.

work on any goods, materials, etc. No one is requested to cease performing any services. No one is requested to cease doing business with any person. There is no intent to have any particular work assigned to any one, nor is there an intent to seek recognition or to start bargaining.

We believe that the people residing in this area should be familiar with what is going on and that is the sole purpose of the patrolling.

Local 41, International Hod
Carriers, AFL-CIO

The Union contends that the object of its picketing was not to seek recognition or bargaining rights as representative of DeJong's employees or to induce them or others not to perform services but "to show the public that the prevailing scale of wages and conditions are not being met". There was evidence, however, that the picket usually sat in his car until an employee of a subcontractor or supplier arrived at the site, at which time he began patrolling with his sign. The record discloses that the picketing did have the effect of stopping work by employees of subcontractors and the delivery of supplies by suppliers. Wynkoop, the Union's president and assistant business agent, admitted that except for discussions at union meetings no effort was made to bring public attention to the alleged substandard wages and conditions other than the picket's activities at the construction site. He testified to the effect that it was the position of the Union that its negotiated wage scale should have uniform force throughout the community; that it wanted others to be paid this "prevailing" wage scale as a minimum; didn't know why there should be any exception; and that any labor organization should receive the prevailing wage rate.

█ On the basis of the record before us we can not say that it was "clearly erroneous" for the District Court to find and conclude that there is reasonable cause to believe that the Union was violating Section 8(b) (4) (C). The evidence need not establish a violation. It

is sufficient to sustain the District Court's finding and conclusion if there be any evidence which together with all the reasonable inferences that might be drawn therefrom supports a conclusion that there is reasonable cause to believe that a violation had occurred.

The manner in which the picketing was conducted; the practice of the picket to remain in his car until an employee of a subcontractor or supplier arrived to enter the site, then to commence patrolling; the picket's trips to the rear of the premises when deliveries were made there; the writing down of supplier's names in the presence of the supplier's employees; and the absence of any general public distribution of the handbills are all factors which preclude us from holding that the District Court was clearly in error in finding that there is reasonable cause to believe that the purpose of the picketing was such as to constitute it a violation of Section 8(b) (4) (C) rather than the ostensible appeal to the public proclaimed by the sign, handbills and self-serving Union protestation.

It has been recognized that picketing "may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated", Bakery and Pastry Drivers and Helpers Local, etc. v. Wohl, 315 U.S. 769, 776, 62 S.Ct. 816, 820, 86 L.Ed. 1178, and "has far more potential for inducing action or nonaction than the message the pickets convey", Building Service Employees, etc. v. Gazzam, 339 U.S. 532, 537, 70 S.Ct. 784, 787, 94 L.Ed. 1045. It is a customary means of enlisting the support of employees. International Brotherhood of Electrical Workers, etc. v. N. L. R. B., 341 U.S. 694, 703, 71 S.Ct. 954, 95 L.Ed. 1299. "The reluctance of workers to cross a picket line is notorious", Printing Specialties & Paper Converters Union, etc. v. Le Baron, 9 Cir., 171 F.2d 331, 334. It can hardly be characterized as clear error for the District Court, pending Board determination of the question of violation after full hearing on the merits, to ascribe to the Union the intent and purpose to bring about the

natural consequences of its acts. And there is evidence to support a conclusion that there is reasonable cause to believe that an object of the picketing was to compel DeJong and other contractor members of the Association to adhere to rates and conditions negotiated by the Union rather than those agreed to by Local 12 as certified bargaining representative of employees of members of the Association. That the attempt may have been indirect does not save it from the proscriptions of Section 8(b) (4) (C).

The remaining issue stems from the Union's contention that the District Court's refusal to require the Board's agents to testify concerning the scope, nature and extent of its preliminary investigation and to produce for examination the files and records pertaining to the conduct of the investigation constituted reversible error.

It appears from the record that a copy of the charges filed with the Board were promptly served on the Union; that the Board took a statement from the Union's representative, Wynkoop, and interviewed other persons prior to filing the petition for injunctive relief. The Regional Director, subpoenaed by the Union, testified that the charge was assigned for investigation, and was investigated under his supervision; that letters were sent to the Union requesting its position in writing; that persons assigned to the case interviewed witnesses of the charging party and offered to interview "any witnesses" of the Union. He was not required, however, to answer questions concerning the conduct or extent of the investigation, or concerning his decisional processes. Other Board agents subpoenaed by the Union also testified but were not required to answer questions regarding the conduct or extent of the investigation.

It is our opinion that the scope, conduct or extent of the preliminary investigation are not matters relevant to or material for consideration on the issue to be adjudicated on hearing of a Section 10(l) petition, i. e., whether reasonable cause exists to believe a violation has occurred. This issue is to be resolved by the evidence adduced by the Board in open court to sustain its petition. The Board is enjoined to make a preliminary investigation but the adequacy of the investigation is judicially tested only by the Board's subsequent ability to sustain its initial determination that the investigation disclosed reasonable cause to believe that a violation occurred.

The Union relies on observations made in Madden v. International Organization of Masters and Pilots, Inc., 7 Cir., 259 F.2d 297 as to concessions made by the Board in connection with its motion to dismiss its appeal from a district court's determination denying it injunctive relief under Section 10(l), in which motion the Board cited its own failure to conform with its Statements of Procedure in making the Section 10(l) preliminary investigation. The Union relies on these observations as constituting holdings that the preliminary investigation is a jurisdictional condition precedent to a Section 10(l) petition for temporary relief, and that an inquiry by the respondent into the scope and conduct of the Board's investigation in a Section 10(l) proceeding is a matter of right. We do not regard the remarks in Madden v. International Organization of Masters and Pilots, Inc., 7 Cir., 259 F.2d 297 as consituting such adjudications. And, insofar as those remarks may in any manner indicate anything contrary to the views herein expressed they are not adhered to.

We do not deem it necessary to discuss contentions made by either party concerning application of the Board's rule against disclosures by officers or employees without its consent. What we said in Starr v. Commissioner of Internal Revenue, 7 Cir., 226 F.2d 721, 723, 724 is pertinent:

"We do not reach the question whether under any circumstances a special agent of the Intelligence Unit of the Treasury Department can be compelled to disclose the manner in which he conducted an investigation

and to produce papers and documents that he may have obtained. It is apparent from the statement of taxpayer's counsel to the Court indicating the testimony which he sought to elicit from the agents, that such evidence was neither relevant nor material to the issues in this case. Of what moment was it that the agent may have made an investigation as to the taxpayer's net worth? True it is that in many cases where direct testimony is unavailable, the Commissioner may be required to rely upon the net worth theory to show the existence of income. However, in the case at bar, the Commissioner was relying upon direct testimony as to the assets, source and amount of unreported income".

The testimony sought to be elicited and the files and records sought to be produced by the Union, through its motions, subpoenas *duces tecum,* and questioning were not relevant and the District Court did not err in refusing to require the Board's agents to answer the questions or produce the files and records.

The order of the District Court is affirmed.

Affirmed.