192 F.Supp. 339 (1961)
Ralph E. KENNEDY, Regional Director of the Twenty-first Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
LOS ANGELES JOINT EXECUTIVE BOARD OF HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS UNIONS, AFL-CIO: Southern California Cooks Association, Local No. 468; Southern California Waiters Alliance, Local 17; Waitresses and Cafeteria Workers, Local Union No. 639; Bartenders Union, Local 284; and Miscellaneous Restaurant Employees Union, Local 440, Respondents.
No. 90-61.
United States District Court S. D. California, Central Division.
February 27, 1961.
*340 Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel, Washington, D. C., Daniel J. Harrington, Regional Atty., Region 21, Los Angeles, Cal., Walter N. Moldawer, Milo V. Price, Washington, D. C., Attys., by Milo V. Price, for N.L.R.B.
Paul, Hastings & Janofsky, by Alvin F. Slaight, Jr., Washington, D. C., for charging party.
Bodle & Fogel, Los Angeles, Cal., by Daniel Fogel, and Stephen Reinhardt, Los Angeles, Cal., for respondents.
YANKWICH, District Judge.
On December 28, 1960, Bernard H. Tohl, doing business as The Islander, filed a charge against the respondent Union charging violation of Section 8(b) (7) (B) of the Labor Management Relations Act, as amended 29 U.S.C.A. § 158(b) (7) (B). The gist of the charge is stated in this manner:
"The above named labor organizations, and each of them, by their officers, agents and representatives have been, since on or about December 12, 1960 and now are, picketing or causing to be picketed, or threatening to picket or causing to be picketed, The Islander restaurant, an object thereof being to force or require said employer to recognize or bargain with said labor organizations, and each of them, as the collective bargaining representatives of his employees, or to force or require *341 the employees of The Islander to accept or select such labor organizations as their collective bargaining representatives, where within the preceding twelve months a valid election under section 9(C) of the Act had been conducted."
On January 27, 1961, the Regional Director of the Twenty-first Region of the National Labor Relations Board, for and on behalf of the Board, filed a petition for injunction under Section 10(l) of the Act. 29 U.S.C.A. § 160(l). After an order to show cause was issued the matter was heard by the undersigned upon the answer of the respondents filed February 7, 1961.
Under the Act the remedy sought in the courts is temporary in nature because it is effective only until the Board, in adversary proceedings before it, determines the correctness or incorrectness of the charges. For this reason the question before the court, in a proceeding of this character, is not the existence or nonexistence of the practices contained in the charges before the Board, but whether in instituting this proceeding the Director "has reasonable cause to believe such charge is true". 29 U.S.C. A. § 160(l).
The courts have uniformly held that all that this requires is the prima facie establishment of facts from which an inference might be drawn that the charge is true. If this be so, injunction issues, whether the charges are ultimately proved true in the proceedings before the Director or not. (See the writer's opinion in Le Baron v. Los Angeles Building & Construction Trades Council, D.C.Cal. 1949, 84 F.Supp. 629, 634-637, affirmed in Los Angeles Building & Construction Trades Council v. Le Baron, 9 Cir., 1951, 185 F.2d 405, 406; Douds v. Wood, Wire and Metal Lathers International Association, 3 Cir., 1957, 245 F.2d 223, 225; Douds v. Milk Drivers and Dairy Employees Union Local 584, 2 Cir., 1957, 248 F.2d 534, 537; Local 450, International Union of Operating Engineers, AFL-CIO v. Elliott, 5 Cir., 1958, 256 F.2d 630, 638; American Federation of Radio and Television Artists AFL-CIO v. Getreu, 6 Cir., 1958, 258 F.2d 698, 699.) In Madden v. International Organization of Masters, Mates & Pilots of America, Inc., 7 Cir., 1958, 259 F.2d 312, 313, the principle is summed up very tersely in these words:
"By its express terms that provision is aimed at an injunction pendente lite i. e., pending the final adjudication of the Board based upon its hearings; subsequently judicial review at the Court of Appeals level comes into play. Congress has expressly authorized district courts to grant temporary injunctive relief pending administrative decision. Clearly a district judge proceeding under § 10(l), as here, looks to the statutory yardstick of `reasonable cause' required as the basis for the petition and he is certainly not deciding which party, petitioner or respondent, is ultimately to prevail, nor do we now." (Emphasis added.)
In a matter of this character where the injunction is sought in aid of an administrative procedure provided by the Congress, the usual hesitance of courts to grant temporary injunctions (Paramount Pictures Corporation v. Holden, D.C.1958, 166 F.Supp. 684) does not come into play. For here, as stated by the Supreme Court in a noted case, the
"standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief in these cases." Hecht Company v. Bowles, 1944, 321 U.S. 321, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754.
See, Porter v. Warner Holding Co., 1946, 328 U.S. 395, 397-399, 66 S.Ct. 1086, 90 L.Ed. 1332. And see, Brown ex rel. N.L. R.B. v. Pacific Telephone and Telegraph Co., 9 Cir., 1955, 218 F.2d 542, 544, and, especially, the language of the concurring *342 opinion of Judge Pope, at page 545.[1] Rightly, because the injunction is sought in aid of the fulfillment of the social aims provided by a statutory scheme and not to aid a private litigant.
The respondents insist that what is called "informational picketing" is not prohibited by the statute under which this proceeding is instituted. The statute condemns as an unfair labor practice by employees
"to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees: * * *
"(B) where within the preceding twelve months a valid election under section 159(c) of this title has been conducted, or * * *."
The language of the Section is explicit. It prohibits all the acts enumerated in the paragraph within one year after an election. If it did not, it would be meaningless. In the discussion of the Conference Report of the Bill before the Senate, Senator Wayne Morse of Oregon, a noted lawyer and former dean of a law school, is quoted as saying:
"Suppose there had been an election, and the union has lost overwhelmingly. The day after the election is over, bingo, there is another picket line. I think both the employer and the public are entitled to some protection in such a case. It is perfectly fair to have a rule that under such circumstances a picket line cannot be stretched in that kind of labor dispute, for a reasonable period of time. I was willing to go along with 12 months. * *
"I do not believe that the day after the vote, the employer should have to wake up and see a picket line in front of his plant. * * * I think it is reasonable to provide rules of the game, so to speak, that will give such an employer protection from having a picket line stretched before his plant, for at least a reasonable period of time." Legislative history of the Labor Management Relations Act of 1959, Vol. 2, pages 1427, 1428.
The proviso contained in Subdivision 7(c) but confirms the fact that the Congress must have thought that what is called "informational picketing" is forbidden. For if it was not the exception was not necessary.[2] It cannot be questioned *343 that the Congress could curtail lawfully certain types, or all picketing under certain circumstances, as the states have done. (See, Giboney v. Empire Storage & Ice Co., 1949, 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834; Building Service Employees International Union v. Gazzam, 1950, 339 U.S. 532, 540-541, 70 S.Ct. 784, 94 L.Ed. 1045; International Broth. of Elec. Workers, Local 501, A. F. of L. v. National Labor Relations Board, 1951, 341 U.S. 694, 705, 71 S.Ct. 954, 960, 95 L.Ed. 1299, and cases cited in notes 9 and 10 of the opinion; Printing Specialties and Paper Converters Union Local 388, AFL v. Le Baron, 9 Cir., 1948, 171 F.2d 331, 334)
If the testimony before the court is viewed in the light of these principles, the conclusion is warranted that reasonable cause exists for the issuance of the injunction sought by the petitioner.
Admittedly, prior to December 12, 1960, the representatives of the respondents did organizational, recognitional and informational picketing. These consisted of appeals to employees to join the union and requests for a contract, both before and after the election was ordered.
The picket line continued from early in the morning until closing time at or about 2 o'clock a. m. The placards carried by the pickets bore the legend
 "Islander
 Unfair
 We Are Protesting This
 Employers Unfair Labor
 Practices
 . . . . . . .
 L. A. Joint Executive Board
 of Hotel & Restaurant And
 Bartenders Union AFL-CIO"
While protesting that it did not desire the election, the Joint Executive Board not only participated in it but in leaflets which were distributed, they extolled the advantages of unionism and ended with the request:
"Vote for the Los Angeles Joint Executive Board Union, AFL-CIO, to Represent You for Improved Wages and Working Conditions and for Security for Yourself and Your Family."
The placards and picketing also aimed at dissuading consumers from patronizing the "unfair" restaurant. Deliveries were impeded by dissuading drivers of suppliers not to cross the picket line. A State court injunction limited the number and distance to be covered by the pickets.
The election was held on December 12, 1960. The number of valid votes counted was 78. Of this number 65 voted against the Joint Board and 13 for it. On December 19th the Joint Board filed objections to the election. The Regional Director investigated the objections and concluded that they did not raise substantial or material issues. On December 30th he issued a report on objections and certification of results of election
"overruling the objections and certifying that no labor organization is the exclusive representative of all the employees in the unit involved herein."
On January 5, 1961, the Joint Board filed a request for special permission to appeal to the Board from the Regional Director's ruling and for a stay pending the appeal. On January 17th the Board denied the request stating that
"the request raises no matter of which would warrant reversal of the Regional Director's ruling."
In the meantime, with a possible interruption of two days, the picketing continued. The picket line comprised the *344 same number of men who carried placards of similar color which read:
 "To The Public:
 The
 Islander
 Does Not Have a
 Contract with the
 L. A. Joint Executive Board
 of Hotel & Restaurant and
 Bartenders Union AFL-CIO"
The hours had been changed, the pickets working from 5 to 11 o'clock p. m. only.
The assertion is made in letters which have been introduced and by witnesses that the type of picketing had changed from organizational and recognitional to informational. But in matters of this character what is done is determinative. It is doubtful that to anyone the new sign would carry any different meaning than the sign carried in the pre-election picketing. Certainly the employees, suppliers and patrons could reach but one conclusion, i. e., that the picketing was going on.
Pressure of work and the absence of a transcript of the testimony makes it impossible to outline in detail the testimony given at the trial concerning the statements made by persons connected with the Joint Board, the respondent unions and those on the picket line. Indeed, such detailed outline is not necessary. For our purpose it will be sufficient to refer to some of the incidents only which accompanied the pre-election and post-election picketing.
As the picketing began, the employer was informed that the union has a "$200,000.00 picketing fund". In view of this it was suggested that the employer agree to a watered-down contract. On September 7, 1960 a business representative of the Southern California Cooks' Association, Local 468, stated to the employer "Why don't you forget all this silly business and sign a contract?" "We have had pleasant business relations in the past with you." At the same time, the local organizer of the Joint Board told the employer "You made no attempt to negotiate." "Why don't you sign a contract?" "We will break you." "You can't beat us." Later the same day he stated to the employer "I'll get you." An hour before the election the same organizer and other members of the Joint Board again stated to the employer "Why don't you sign a contract?" "Even if you win the election we are going to picket you until the day you lock up the place." "We will still be here." After the polls closed the President of the Bartenders' Union said "This is just the beginning." "You haven't seen anything yet." After the ballots were counted he said "We will be back."
Similar statements were made by or were attributed to others connected with the Joint Board, the respondent unions and the picket line. It is true that some of these statements were either denied to have been made by those to whom they were attributed or an innocent meaning, neither a promise nor a threat, claimed for some of them. This may affect their ultimate evaluation by the Regional Director in determining the existence of the claimed unfair labor practice, but that evaluation is to be made by him, not by us.
Here we are called upon to determine only whether the Regional Director had "reasonable ground to believe" that the charge of unfair labor practice by the respondents is true. In view of this, these statements and reported similar statements made to the employer, employees and others, at or about the time of the election and shortly thereafter, are prima facie proof of the existence of a pattern which it was not the intention of the respondents to change. From it, the Regional Director could infer that they did intend to break down in some manner the resistance of the employer and to cause economic loss to him and his employees. For assuming that the appeal to the public had the effect of minimizing patronage by diverting it to others, it would cause economic loss to the employer and his labor force, which might have to be reduced.
*345 While it is claimed by some of the union officials that they no longer desire a contract, it is quite evident that the picketing has, as one of its objects, the desire that the employer or the employees "give in" by entering into some kind of agreement that would limit the employment to union employees. (See, Cavers for and on Behalf of N.L.R.B. v. Teamsters "General" Local No. 200, D.C.E.D. Wis.1960, 188 F.Supp. 184, 191-192; Penello for and on Behalf of N.L.R.B. v. Retail Store Employees Local Union No. 692, D.C.Md., 1960, 188 F.Supp. 192, 201-202) For why complain that the employer "does not have a contract", if none is desired?
A recent decision from the Seventh Circuit would indicate that the pattern followed here is not new, that other labor unions charged with unfair labor practices have sought to avoid the charge by claiming a change in the nature of their picketing. In Madden v. International Hod Carriers', Building and Common Laborers' Union of America, 7 Cir., 1960, 277 F.2d 688, 691, as here, the union was charged by the National Labor Relations Board with illegal picketing against an employer. In an action instituted by the Regional Director the District Court issued a temporary restraining order pending the final determination of the truth of the charge of unfair labor practices. The facts out of which the charge grew were these:
Following a recognitional election held after the union, known as the Christian Building Trades Local 12, had petitioned the Board for the election, it was certified by the Board as collective bargaining representative for
"`all journeymen and apprentices, laborers, machine operators and truck drivers' employees of members of the Association."
The defendant union had opposed the petition of Local 12.
In the Fall of 1958, De Jong, a member of the Association, was awarded the contract for the erection of a church building in the residential section of Hammond, Indiana. As the general contractor, he retained the carpentry and labor work but subcontracted all other. Work began in the last week of October, 1958. On November 3rd, the union began picketing the construction site. The picket signs charged, in substance, that the subcontractor was not performing his work with qualified craftsmen or paying prevailing wages. The next day the names of DeJong and the Association were substituted for the masonry subcontractor. The picket sign, after the change, read:
 "Notice to Public
 The work being performed
 by the following contractors
 is not being done by qualified
 Building Trades
 Craftsmen
The prevailing rate of pay & conditions are not being met. This notice is addressed only to the general public & not to the employers or employees on the job.
 Geo. DeJong &
 Employer Members of the
 Calumet Contractors Ass'n
 Labors Union #41
 A.F. OF L.-C.I.O.
Because of bad weather the work was suspended the latter part of November, not to be resumed until March 12, 1959. The union picketing with the signs continued after that date. A handbill was issued which read:
"Notice to the Public
"The sole purpose of patrolling this job site is to alert the public that the work being performed is not being done by qualified Building Trades Craftsmen. It is to inform the public that the prevailing rate of pay and conditions are not being met on this job.
"This Notice Is Addressed Only to the Public. It Is Not Addressed to Any Employers or to Any Employees. There is no intent or attempt to induce or encourage employees of any employer to engage *346 in a refusal to work, transport or otherwise handle or work on any goods, materials, etc. No one is requested to cease performing any services. No one is requested to cease doing business with any person. There is no intent to have any particular work assigned to any one, nor is there an intent to seek recognition or to start bargaining.
"We believe that the people residing in this area should be familiar with what is going on and that is the sole purpose of the patrolling.
Local 41, International Hod Carriers, AFL-CIO", 277 F.2d at page 691.
It was contended there, as it is here, that the object of the picketing was not to seek recognition or bargaining rights, as representative of De Jong's employees or to induce them or others not to perform services, but
"to show the public that the prevailing scale of wages and conditions are not being met." 277 F.2d at page 692.
Sustaining the finding of the District Court that, in the circumstances, the Regional Director had reasonable ground to believe that the aim was to force unionization, the Court said:
"It has been recognized that picketing `may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated', Bakery and Pastry Drivers and Helpers Local, etc. v. Wohl, 315 U.S. 769, 776, 62 S.Ct. 816, 820, 86 L.Ed. 1178, and `has far more potential for inducing action or nonaction than the message the pickets convey', Building Service Employees, etc. v. Gazzam, 339 U.S. 532, 537, 70 S.Ct. 784, 787, 94 L.Ed. 1045." 277 F.2d at page 692. (Emphasis added.)
In the case before us, it is quite evident that the Regional Director could "reasonably believe" that the attempt was to avoid the proscription of the Act by pretending that the picketing was merely informational. And facts already referred to show the propriety of drawing such inference from the acts of the union officials despite professed intentions to the contrary. They and certain other admitted facts lend support to the conclusion, which the Regional Director could reasonably reach, that the main objective of the union was still the pre-election objective.
Allusion is made to the fact that after the institution of the unfair labor practice proceeding before the Board, relating to the alleged discrimination by the employer against employees for union activities, the Joint Board declined to agree to the settlement of the dispute suggested by the National Labor Relations Board and agreed to by the employer. By it, in addition to compensating one employee affected in the sum of $500, the employer was required to post, in a conspicuous place for a period of 30 days, the standard notice required by the Board that he will not interfere with the union rights of the employees. The full statement is printed in the margin.[3]
*347 The reason given for the Joint Board's refusal to join in the settlement was that the National Labor Relations Board had ordered the posting to go on for 30 days instead of 60 days. As the Joint Board only received 13 favorable ballots in the election, the National Labor Relations Board had the right to assume that a period of 30 days was adequate to inform all prospective sympathizers with the union cause.
The Regional Director could very well consider the reason given to be specious. And the refusal to approve the settlement could be reasonably interpeted as indicative of the fact that having lost the election the respondents were determined not to recognize the result in any manner. A similar inference could also be drawn from the fact that, although they objected to the findings of the Regional Director and sought to have them set aside by direct appeal to the National Labor Relations Board, a proceeding which was not finally concluded until January 30, 1961, they began to picket again on December 14, 1960, the picketing being of the type already described and which continues to the present time.[4][Additional facts are found in the findings printed as Appendix A, at the end of this opinion.]
On the basis of this showing in the record, the Regional Director had "reasonable ground to believe the charges" made in the petition before him to be true and which the Board alone can and should finally adjudicate. To allow them to do so, injunction as prayed for will issue.[5]

Appendix A
This cause came on to be heard upon the verified petition of Ralph E. Kennedy, Regional Director of the Twentyfirst *348 Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10(l) of the National Labor Relations Act, as amended (herein called the Act), 29 U.S.C.A. § 160(l) pending the final disposition of the matter involved herein pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondents filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held on February 13, 14, 15 and 16, 1961. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court makes the following:

Findings of Fact
1. Petitioner is Regional Director of the Twenty-first Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.
2. On or about December 28, 1960, Bernard G. Tohl, doing business as The Islander (herein called Islander), pursuant to provisions of the Act, filed a charge with the Board alleging that Los Angeles Joint Executive Board of Hotel and Restaurant Employees and Bartenders Unions, AFL-CIO (herein called Joint Board); Southern California Cooks Association, Local No. 468 (herein called Local 468); Southern California Waiters Alliance, Local 17 (herein called Local 17); Waitresses and Cafeteria Workers, Local Union No. 639 (herein called Local 639); Bartenders Union, Local 284 (herein called Local 284); and Miscellaneous Restaurant Employees Union, Local 440 (herein called Local 440), (herein sometimes collectively called respondents), each a labor organization, have engaged in, and are engaging in, unfair labor practices within the meaning of Section 8(b) (7), subparagraph (B), of the Act, 29 U.S. C.A. § 158(b) (7) (B).
3. The aforesaid charge was referred to petitioner as Regional Director of the Twenty-first Region of the Board.
4. There is, and petitioner has, reasonable cause to believe that:
(a) Respondents Joint Board, Local 468, Local 17, Local 639, Local 284 and Local 440, unincorporated associations, are organizations in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.
(b) Respondent Joint Board maintains its principal office at Los Angeles, California, and at all times material herein has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members and of employee members of affiliated and constituent local unions.
(c) Respondents Local 468, Local 17, Local 639, Local 284 and Local 440 maintain their principal offices at Los Angeles, California, are constituent local unions of respondent Joint Board, and at all times material herein have been engaged within this judicial district in transacting business and in promoting and protecting the interests of their employee members.
(d) The Islander, which opened for business on or about August 1, 1960, is engaged at Los Angeles, California, in the operation of a restaurant. In the course and conduct of its business, the Islander, during the first 20 days following its opening, had a gross volume of business in excess of $135,000, and during the same period purchased and received beverages, goods, commodities and supplies originating outside the State of California valued at in excess of $20,000. On the basis of these figures projected over a 1-year period, the Islander's annual gross volume of business will exceed $1,000,000, and its annual purchases *349 of beverages, goods, commodities and supplies originating outside the State of California will exceed the sum of $100,000.
(e) Respondents Joint Board, Local 468, Local 17, Local 639, Local 284 and Local 440 are not currently certified as the representatives of any of Islander's employees, nor is any of said respondents certified as such representative.
(f) On or about December 12, 1960, the Board, pursuant to the provisions of Sections 8(b) (7) (C) and 9(c) of the Act, 29 U.S.C.A. §§ 158(b) (7) (C), 159 (c) duly conducted an election by secret ballot among the employees of the Islander in an appropriate unit consisting of:
All employees, excluding parking lot attendants, guards, watchmen and supervisors as defined in the Act.
Respondent Joint Board appeared on the ballot at said election. The said employees voted against being represented by any union.
(g) On or about December 30, 1960, the Regional Director of the Twenty-first Region of the Board issued a Report on Objections and Certification of Results of Election, concluding that objections to the election filed by respondent Joint Board on or about December 19, 1960, did not raise substantial or material issues, and overruling the same, and certifying that a majority of the valid ballots had not been cast for any labor organization appearing on the ballot and that no such organization is the exclusive representative of all the employees in the unit involved within the meaning of Section 9(a) of the Act.
(h) On or about January 17, 1961, the Board issued its order denying respondent Joint Board's request for special permission to appeal from the Regional Director's ruling on objections and Certification of Results of Election, and for stay of such ruling, concluding that the said request of respondent Joint Board raised no matter which would warrant reversal of the Regional Director's ruling.
(i) No charge has been filed with the Board under Section 8(a) (2) of the Act alleging that the Islander has unlawfully recognized or assisted any labor organization.
(j) At all times prior to the election on December 12, 1960, respondents have demanded that the Islander recognize and bargain with them as the representatives of the Islander's employees and, in furtherance thereof, have, since on or about September 7, 1960, picketed the Islander.
(k) Notwithstanding the election, and Certification of Results of Election, which issued on December 30, 1960, respondents, since such election and certification of results, have picketed, and continued to picket the Islander. The picketing since the election and the certification of results thereof has been, and continues to be, in furtherance of respondents' demands for recognition and bargaining, and to compel the Islander's employees to accept or select respondents as their collective bargaining representatives.
(l) An object of respondents' picketing set forth in Finding of Fact 4(k) above has been, and is, to force or require the Islander to recognize and bargain with respondents as the representatives of Islander's employees, or to force or require such employees to accept or select respondents as their collective bargaining representatives, notwithstanding that respondents are not, nor is any of them, currently certified as the representatives of such employees and a valid election under Section 9(c) of the Act has been conducted within the preceding 12 months.
(m) The acts and conduct of respondents set forth in Findings of Fact 4(k) and (l) above, occurring in connection with the operations of the Islander, have a close, intimate, and substantial relation to trade, traffic and commerce among the several States and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.
*350 5. It may fairly be anticipated that, unless enjoined, respondents will continue and repeat the acts and conduct set forth in Findings of Fact 4(k) and (l) above, or similar or like acts and conduct.

Conclusions of Law
1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(l) of the Act is empowered to grant injunctive relief.
2. There is, and petitioner has, reasonable cause to believe that:
(a) Respondents are labor organizations within the meaning of Sections 2 (5), 8(b) and 10(l) of the Act, 29 U.S. C.A. §§ 152(5), 158(b), 160(l).
(b) The Islander is engaged in commerce within the meaning of Section 2 (6) and (7) of the Act, 29 U.S.C.A. § 152(6, 7).
(c) Respondents have engaged in unfair labor practices within the meaning of Section 8(b) (7), subparagraph (B), of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof, 29 U.S.C.A. § 151(b).
3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final adjudication of the Board of the matter herein involved pending before the Board, respondents, their officers, representatives, agents, servants, employees, attorneys, and all members, persons and labor organizations acting in concert or participation with them, be enjoined and restrained during the remainder of the twelve months succeeding the Certification of Results of Election conducted among the Islander's employees, which issued on December 30, 1960, from the commission, continuation, or repetition of the acts and conduct set forth in Findings of Fact 4(k) and (l) above, acts or conduct in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondents' acts and conduct in the past.
Now, therefore, in accordance with the foregoing findings of fact and conclusions of law, and opinion and decision heretofore issued herein, it is ORDERED, ADJUDGED AND DECREED that, pending the final adjudication of the Board of the matter involved pending before the National Labor Relations Board, respondents Los Angeles Joint Executive Board of Hotel and Restaurant Employees and Bartenders Unions, AFL-CIO; Southern California Cooks Association, Local No. 468; Southern California Waiters Alliance, Local 17; Waitresses and Cafeteria Workers, Local Union No. 639; Bartenders Union, Local 284; and Miscellaneous Restaurant Employees Union, Local 440, and each of them, their officers, representatives, agents, servants, employees, attorneys and all members, persons and labor organizations acting in concert or participation with them, be, and they hereby are, enjoined and restrained from:
Picketing the Islander or causing the Islander to be picketed or threatening to picket or cause the Islander to be picketed, during the remainder of the twelve months succeeding the Certification of Results of Election conducted among the Islander's employees, which issued on December 30, 1960, where an object thereof is to force or require the Islander to recognize or bargain with respondents, or any of them, or any other labor organization, as the representatives of the Islander's employees, or to force or require such employees to accept or select respondents, or any of them, or any other labor organization, as their collective bargaining representatives.
NOTES
[1] The opinion in this case approves the criteria stated by the writer in LeBaron v. Los Angeles Building & Construction Trade Council, D.C.Cal., 1949, 84 F. Supp. 629.
[2] The proviso reads:

"Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including con-consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services." 29 U.S.C.A. § 158(b) (7) (C).
It is quite evident from its wording that the proviso is intended to apply to subdivision (C) only. By no rule of construction, grammatical or other, could it be held to qualify subdivision 7(B), violation of which is charged in the proceeding before us. As already stated, this subdivision evidences the intent of the Congress to prohibit picketing of all kinds for a period of one year after an election. And this the Congress could do constitutionally.
I am aware that Judge William J. Jameson of the District of Montana reached a contrary conclusion in Graham v. Retail Clerks International Association, D.C.1960, 188 F.Supp. 847. With all due respect, I cannot agree with his conclusion or the reasoning behind it. And the broad language used by Judge Lloyd H. Burke of the Northern District of California in Brown for and on Behalf of N. L. R. B. v. Department & Specialty Store Employees Union, D.C.Cal., 1960, 187 F.Supp. 619, in speaking of "informational picketing", does not command assent. It is evidently based on a concession of both parties as appears from the following quotation:
"Both parties agree that informational or advertising picketing, absent unlawful objective, is an exercise of right which remains unaffected by the Act." (p. 623.)
[3] "Notice
 To All Employees
 Pursuant to

an Agreement approved by the Regional Director for the Twenty-First Region of the National Labor Relations Board, and in order to effectuate the policies of the National Labor Relations Act, we hereby notify our employees that:
We will not in any manner interfere with, restrain, or coerce our employees in the exercise of their right to self-organization, to form labor organizations, to join or assist the local unions which comprise the Los Angeles Joint Executive Board of Hotel and Restaurant Employees and Bartenders Unions, AFL-CIO, or any other labor organization, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, and to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in Section 8(a) (3) of the Act as modified by the Labor Management Reporting and Disclosure Act of 1959.
We will offer to the employee named below immediate and full reinstatement to his former or substantially equivalent position without prejudice to any seniority or other rights and privileges previously enjoyed, and make him whole for any loss of pay suffered as a result of the discrimination.
Anthony L. Riccio$500.00
All our employees are free to become or remain members of the above-named union or any other labor organization. We will not discriminate in regard to hire or tenure of employment or any term or condition of employment against any employee because of membership in or activity on behalf of any such labor organization."
[4] Apposite here are the statements made by the Court of Appeals for the Ninth Circuit as to real meaning of picketing:

"It is known to all the world that picketing may comprehend something other than a mere expression of views, argument or opinion. As conducted here it constituted an appeal for solidarity of a nature implying both a promise of benefit and a threat of reprisal. The reluctance of workers to cross a picket line is notorious. To them the presence of the line implies a promise that if they respond by refusing to cross it, the workers making the appeal will in turn cooperate if need arises. The converse, likewise, is implicit. `Respect our picket line and we will respect yours.' In this setting the picket line is truly a formidable weapon, and one must be naive who assumes that its effectiveness resides in its utility as a disseminator of information." Printing Specialities & Paper Converters Union Local 388, AFL v. LeBaron, 9 Cir., 1948, 171 F.2d 331, 334. (Emphasis added.)
[5] As aptly said by the Court of Appeals for the Ninth Circuit in Department & Specialty Store Employees Union, Local 1265, R.C.I.A. AFL-CIO v. Brown, 9 Cir., 1961, 284 F.2d 619, 628-629:

"All that is required, even as a preliminary to seeking an injunction, is that the Board have reasonable cause to believe that there has been a violation of the Act. Douds v. International Longshoremen's Association, 2 Cir., 1957, 242 F.2d 808, 810. The Board in this case could certainly find a substantial basis on evidence that the picketing had for an objective the forcing and requiring of Kinney to recognize and bargain with the appellant. True enough, the picketing may have been informational and advisory to the extent of being permissible under this legislation. This, however, is of no significance if the picketing also had as one of its objects the forcing and requiring of Kinney to recognize it as the bargaining agent of Kinney's employees." (Emphasis added.)