181 F.Supp. 324 (1960)
John J. CUNEO, Regional Director of the Twenty-second Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner
v.
UNITED SHOE WORKERS OF AMERICA, AFL-CIO, JOINT COUNCIL NO. 13, United Shoe Workers of America, AFL-CIO, and Local No. 73, United Shoe Workers of America, AFL-CIO, Respondents.
Civ. No. 100-60.
United States District Court D. New Jersey.
February 26, 1960.
*325 Jacques Schurre, of National Labor Relations Board, Washington, D. C., for petitioner.
Rothbard, Harris & Oxfeld, Newark, N. J., Cooper, Ostrin & DeVarco, Eugene N. Sosnoff, New York City, for respondents.
MEANEY, District Judge.
This proceeding is before the court on a petition filed on behalf of the National Labor Relations Board (Board herein), pursuant to Section 10(l) of the National Labor Relations Act, as amended (61 Stat. 149, 73 Stat. 544, 29 U.S.C.A. § 160(l). The Board seeks an injunction against picketing of the Q. T. Shoe Manufacturing Company plant in Paterson, N. J. (Q. T. herein) pending the final disposition of a charge filed with the Board by Q. T. Said charge alleges that respondents have engaged in and are engaging in an unfair labor practice within the meaning of Section 8(b) (7) (C) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(b) (7) (C), which section proscribes certain recognition and organizational picketing.
The Board is entitled to an injunction if an unfair labor practice within the ambit of the statute has in fact been committed by respondents.
The pertinent facts are as follows: On January 21, 1960, respondents began to picket Q. T. for recognition as the collective bargaining representative of Q. T.'s employees, who had not been represented by any labor union. The pickets were striking employees of Q. T.
The testimony reveals threats, acts of physical violence and other intimidating and coercive acts on the part of respondents and those acting for them, all directed against non-striking Q. T. employees. The testimony also reveals that on one occasion respondents physically prevented an employee of a customer of Q. T. from driving the customer's truck away from the Q. T. plant. Circumstances testified to also point to several instances of property damage inflicted *326 at the instigation of respondents. These acts continued until February 1, 1960, when respondents filed a petition for an election under Section 9(c) of the National Labor Relations Act, 29 U.S.C.A. § 159(c).
In pertinent part, Sec. 8(b) (7) (C) provides as follows:
"(b) it shall be an unfair labor practice for a labor organization or its agents* * *
"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees: * * *
"(C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c) (1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof:"
The question to be determined by the court is whether the application made by the Board comes within the purview of the provisions of Section 8(b) (7) (C) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (7) (C). More particularly, the question is limited to whether ten days of violence, coercion and intimidation in organizational picketing before filing of a petition for the selection of the respondent Local No. 73 as the collective bargaining representative constitutes unreasonable delay and an unfair labor practice as above referred to; and whether, if so, this is such as to warrant issuance of an injunction against all forms of picketing pending final disposition of the matters presently pending before the Board.
Peaceful picketing, as done in so many instances, does not constitute a menace to free choice of a bargaining representative. But threats and a series of untoward instances immediately subsequent to the initiation of the organizational strike, and before filing of a petition for election of a bargaining representative, may constitute such an unfair practice as to warrant the issuance of an injunction. There seems to be no question in the instant case that free choice has been improperly inhibited to the point that the court is warranted in concluding that the application for selection of a labor organization as the collective bargaining representative has been unduly delayed. The unlawfully aggressive nature of the picketing and its coercive effect on the employees have combined in the instant case to shorten the period for which the Union may reasonably be allowed to picket before seeking the impartial intervention of the Board.
Under established Board policy the representation election will not be held until the effects on the employees of unlawful conduct on the part of the respondents have been dissipated. It would be anomalous to hold that respondents may picket until such time as a free election may be held, where respondents' unlawful conduct has precipitated the delay.
The petition for an election not having been filed, in the opinion of this court, within a reasonable time after the commencement of the picketing described in sec. 8(b) (7), all further picketing of the plant of the Q. T. Shoe Manufacturing Company by respondents will be enjoined, and an injunction to that effect is granted.
*327 While realizing the usual impartiality of the Board in its handling of labor disputes, it is suggested that the Labor Board do not unduly delay the setting of a date for an election.
Let an order be submitted.