Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

DISTRICT 65, RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, AFL–CIO, Respondent.

No. 62–C–482.

United States District Court
E. D. New York.

June 1, 1962.

Stuart Rothman, Washington, D. C., for petitioner, Jacques Schurre, New York City, George Norman, Paul F. Dwyer, Washington, D. C., of counsel.

Harry H. Rains, Mineola, N. Y., for Charging Part, Eastern Camera and Photo Corp.

Weisman, Allen, Spett & Sheinberg, New York City, for respondent, David Jaffe and Myron R. Nadler, New York City, of counsel.

BRUCHHAUSEN, District Judge.

On or about April 3, 1962, the Eastern Camera and Photo Corp., (hereinafter called Eastern or the employer) filed a charge with the National Labor Relations Board, alleging that the respondent District 65, Retail, Wholesale and Department Store Union, AFL–CIO, a labor organization (hereinafter called the Union) was and had been engaged in unfair labor practices within the meaning of Section 8(b) (7) (C) of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (7) (C).

Pursuant to Section 10(*l*) of said Act: 29 U.S.C.A. 160(*l*), the Board caused a preliminary investigation to be made. Concluding that there was reasonable cause to believe the truth of the charges, a petition was filed on May 4, 1962, in this court by the Board for the issuance of an injunction, pending final disposition of the charges by the said Board.

On that day this Court issued a temporary restraining order herein.

The issues now before this court for determination are whether there is reasonable cause to believe that the violation charged was committed and whether it is just and proper to grant such injunction. A hearing on the petition commenced on May 9, 1962 and was concluded on May 18, 1962. May 22nd was fixed as the date for the filing of additional briefs.

Considerable trial time could have been spared if the respondent had observed the rule of Madden v. International Hod Carriers, 7 Cir., 277 F.2d 688, cert. denied in 364 U.S. 863, 81 S.Ct. 105, 5 L.Ed. 2d 86. The Union persisted in its at-

tempts to establish matters solely within the province of the National Labor Relations Board. Voluminous offers of proof were made by it on this score until this Court after what it considered the exercise of a fair degree of patience, suggested their discontinuance. In Madden it was unmistakably held that the scope, conduct or extent of the preliminary investigation by the said Board are not relevant in a Section 10(*l*) proceeding, such as is now before this Court.

The following facts are found:

1. On March 29, 1962 three employees of Eastern were discharged.

2. Commencing on March 31, 1962, agents of the Union picketed and caused others to picket stores of Eastern, the employer.

3. On or about April 3, 1962 the aforesaid charge, made by the employer against the Union was filed with the said Board and referred by it to the petitioner.

4. The Board caused the said investigation to be made.

5. On May 4, 1962, the said Board filed the said petition in this Court.

6. The said picketing continued from March 31, 1962 to May 4, 1962, the date when this Court issued the said temporary restraining order.

7. The Union is not and was not certified as the representative of any of Eastern's employees.

8. On April 26, 1962, the Union filed a petition for an election under Section 9(c) of the said Act, 29 U.S.C.A. § 159 (c).

9. Petitioner is Regional Director of the Second Region of the said Board, an agency of the United States, and filed the said petition for and on behalf of the said Board.

10. This Court has jurisdiction, pursuant to Section 10(*l*) of the said Act.

11. The respondent, an unincorporated association, is a labor union, maintaining its principal office in the City of New York, and at all the times mentioned herein has been engaged within this district in transacting business and in promoting the interests of its employee members.

12. The employer operates a store at 68 West Columbia Street, Hempstead, where it is and has been engaged in the business of selling and repairing cameras and photographic equipment, also thirteen similar stores in Nassau and Queens Counties in the State of New York, including stores in Babylon, Flushing and Lynbrook, further, Eastern's gross sales exceed $500,000 per annum and it annually receives goods and materials from outside of said State, valued in excess of $50,000 and thus is engaged in interstate commerce.

13. No charge has been filed with the said Board under Section 8(a) (2) of the said Act.

All of the said facts were admitted or not disputed excepting finding No. 4. It was established at the trial.

AS TO THE CHARGE THAT THE RESPONDENT VIOLATED SECTION 8(b) (7) (C) OF THE NATIONAL LABOR RELATIONS ACT BY PICKETING TO FORCE THE EMPLOYER TO RECOGNIZE THE UNION AND CONTINUED SUCH PICKETING FOR AN UNREASONABLE PERIOD OF TIME.

Section 8(b) (7) (C) of the National Labor Relations Act, 29 U.S.C.A. § 158 (b) (7) (C), insofar as applicable, sets forth:

"It shall be an unfair labor practice for a labor organization or its agents * * * to picket * * * where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, * * * unless such labor organization is currently certified as the representative of such employees * * * where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed

thirty days from the commencement of such picketing."

The said section further provides that picketing for the purpose of advising the public that the employer does not have a contract with a labor organization is not prohibited unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any service.

The petitioner's principal claim is that the respondent, admittedly uncertified to represent the employees, violated the statute in that:

1. An object of the picketing by respondent was to force the employer to recognize the respondent Union;

2. The picketing continued for an unreasonable period of time, i. e., from March 31, 1962 to April 26, 1962, the date when the petition for election was filed by respondent.

The credible testimony is that an object of the picketing by the Union was to force the employer to recognize the Union as the employee's representative.

As stated, three employees were discharged on March 29, 1962. At about 2 P.M., on the following day, March 30, Nathan Nattman, an organizer for the Union, accompanied by the said former employees met with Morton A. Shapiro, the then attorney for the employer. There was a second meeting at about 6 P.M. on that day between Nattman and Shapiro. The latter meeting was also attended by a committee of the employees. Shapiro testified that at the first meeting, reiterated at the second meeting, Nattman made three demands, i. e., reinstatement of the discharged employees, recognition of the Union and commencement of negotiations for a contract. At the first meeting, Nattman stated that if the demands were not met he would have every employee on the street (Tr. 149–152). On March 31, Cleveland Robinson, secretary and treasurer of the Union informed Shapiro that "we (the Union) want immediate recognition and set a

date for commencement of negotiations and put the men back to work and we will arbitrate the reasonableness of their discharge."

Nattman, called as a witness by petitioner testified as to a conversation with Shapiro on March 30, as follows:

"Q. Did you ask Mr. Shapiro, who was acting for the company, that the company recognize your Union?

"A. I did (Tr. 68)."

Nattman admitted signing an affidavit on April 10, 1962, at the request of a representative of the National Labor Relations Board, wherein he stated:

"I asked for reinstatement of the three men, recognition of the Union as a bargaining agent of all of the employees, and commencement of negotiations, otherwise we would commence picketing." (Tr. 129, 130)

Bernard Cooperman, one of the three discharged employees, called as a witness for the respondent, admitted on cross-examination that he signed an affidavit on April 16, 1962, containing the following statement:

"Nattman told Shapiro that he wanted three conditions fulfilled. No. 1, he wanted the men reinstated. No. 2, he wanted recognition of the Union, and three, the Union wanted immediate negotiations with the company, or else they would walk out." (Tr. 486, 487)

Edward Berry, a discharged employee, also called as a witness by the Union, testified on cross-examination, that he signed an affidavit for the N.L.R.B., dated April 6, 1962, stating that at the second meeting on March 30, the following occurred:

"Shapiro asked Nattman what the Union wanted. Nattman mentioned three points: 1. Reinstate the three discharged employees. 2. Recognize District 65 as the collective bargaining agent for all employees. And 3, set a date early next week for contract negotiations.** I did not

object to the phrasing." (Tr. 622, 624, 633)

The Court finds as finding No. 14 that an object of the picketing was to force or require the employer to recognize and bargain with the respondent as the representative of the employees.

Peaceful picketing by a Union for the purpose of influencing employees to join a Union is permitted by the said statute, 29 U.S.C. 158(b) (7) (C) for a limited period of time. The statute allows picketing prior to filing a petition for election "within a reasonable period of time not to exceed thirty days." It is conceded that the respondent Union commenced picketing on March 31, 1962 and continued it until April 26, 1962, the date of filing a petition for election. A principal issue is whether twenty-six days was "a reasonable period of time" for the picketing under the circumstances of this case. The statute sets up an orderly procedure for determination of a Union's representation of employees, thus affording them freedom of choice of a bargaining agent. The Government contends that the Union committed unfair labor practices, within the meaning of the statute, in resorting to coercion, threats, intimidation, violence and abuse to force recognition of the Union by the employer and that under such circumstances the Union did not file the petition for election within a reasonable time. In short, it is urged that those practices constitute violations of the law.

Each party called a number of witnesses. A substantial portion of the testimony is directed to events taking place at various stores of the employer during the picketing. Some of the petitioner's witnesses are in the category of disinterested witnesses. All of the respondent's witnesses were either officers of the Union or rank and file members.

Morton A. Shapiro, a witness for the petitioner, acted as attorney for the employer for a brief period up to about March 31, 1962, when he was succeeded by other counsel. His testimony on the discussions with Union representatives relating to recognition of the Union, is substantially corroborated by the sworn statements of Union representatives, as previously mentioned. He testified that on that day, when the picketing commenced, Cleveland Robertson, secretary of the Union, stated to him: "you better not operate those stores with other people or there will be violence."

A few days later, on April 2nd, an incident occurred at the employer's Babylon store. The petitioner's witness, David Margulies, a business acquaintance of the president of Eastern, but not in its employ, was requested by the employer, to open the store, which he did at about noon on that day. There were no pickets there. That afternoon, while waiting on customers, eight people entered the store and crowded around him. The customers left forthwith. He testified that John Giles, a Union member, halted him with his arm, pushed him against the wall, called him a scab, told him he was taking away someone's livelihood and said "if I know what is good, to close up the store." The men waited around until Margulies closed the store. Witnesses for the respondent admitted that at least six men entered the store and that Giles did all the talking. After closing the store, Margulies called the police and on their arrival reopened the store. (Tr. 291–308)

Other incidents occurred on that same day, April 2nd. At about 8:40 A.M., Allan Kay, an employee of Eastern was entering the Hempstead store when Nattman, the Union organizer, grabbed him by the arm and asked him why he was going to work. Shortly thereafter Kay opened the Lynbrook store. Later that day, as testified to by Kay, 18 pickets, including Giles, Goodman and Berry entered the store. They asked Kay why he hadn't joined them and requested that he close the store. Giles slapped a pencil out of Kay's hand and said are you going to close the store or not, that Union people from the City are pretty rough. Kay readily admitted that he had at one time taken merchandise from the store, valued at $15, also that a cousin of the employer resided with his family. (Tr.

273–275) Cooperman, respondent's witness admitted that six pickets entered the store and requested Kay to close it (Tr. 463–465).

Melvin Greenstein, formerly employed by Eastern testified that on April 10, Nattman, the Union organizer, and some twelve other men followed him into the Flushing store, requested him to get his coat and leave the store (Tr. 208, 209). Nattman admitted on cross-examination that he conferred with Greenstein in the store. Respondent's witness, Goodman, testified that Greenstein concocted the plan to leave the store. His testimony was unconvincing.

It is helpful to a trier of the facts, to have the benefit of the testimony of witnesses, with no interest in the controversy or affiliation with any of the parties. Robert J. Buck, engaged in the advertising business, an infrequent customer of the employer testified that on April 21st, he went to the Hempstead store to pick up some films. The pickets leveled epithets of scab, dumb jerk, etc. On leaving the store, Giles, frequently alluded to in the record, told Buck that if he wanted to fight, Giles would fight him. Buck, believing that this was not the way a customer should be treated, reported the incident to the police. He returned to the store and encountered Giles when he emerged. Giles said are you the one who wants to fight and Buck replied that he could say it with his fists. Thereupon Giles lowered his shoulder, charged into Buck and knocked him out of the way. Giles struck first and Buck responded. Buck ended up with a black eye and bruises. While much of the testimony of the respondent's witness Marra was partisan, it is appropriate to note her testimony as to the first exit of Buck from the store on that day. She stated that Buck remarked to the pickets that they were pretty brave with four of them on the line, whereupon Giles replied "well, I will take my picket sign off and fight you," and that Buck then said he wouldn't waste his time and walked away." (Tr. 179–196; 518–528)

The petitioner's witness, Frank J. Giordano, the manager of the Lynbrook store, testified that on leaving there in the evening of April 9th Goodwin, one of the pickets, told him that if he didn't watch himself his arm would be broken; that on April 14th on returning to the store after luncheon he encountered Giles and five other pickets; that Giles stepped in front of him and uttered profane words about his mother, grabbed him by the left arm and shoved him through the door, saying "let's settle this right now." Later, at a cafeteria, Giles called Giordano a scab, pushed him and asked him to step outside and settle it. Nattman then directed Giles to withdraw (Tr. 238–240).

Aaron A. Knoff, president of Eastern, testified that Giles threatened to break Eastern also as to interferences by the Union with deliveries to the stores and pickups of merchandise including an incident on April 3rd when Nicholas J. Orlando, a chauffeur for Fotocrome Co., called to pick up merchandise. Orlando testified that he drove his truck to the parking lot in the rear of the Hempstead store. He made a pickup, as he started to leave, the pickets stopped him. One with a stone in his hand, said it was a good truck and it should be kept that way. Several pickets jumped in front of the truck, blocking its movement. Thereupon, Orlando returned the packages to the store. Nattman, the Union organizer, admitted that he told Orlando not to cross the picket line (Tr. 37–44; 215–217).

The petitioner's witness, Anthony P. Curcio, a customer of Eastern, entered its Hempstead store on April 20th to make a purchase. The pickets warned him not to patronize the concern. Giles, near the door of the store, called him a scab. A policeman told Giles that if he was a picket he should carry a sign. The respondent admits that a police car appeared (Tr. 198–202).

The Court finds as finding No. 15 that in furtherance of its demands for recognition and bargaining rights the Union

and its agents since March 30, 1962 repeatedly engaged in threats, acts of violence and other intimidating and coercive conduct against employees of Eastern, its customers and others.

There is reasonable cause to believe that the respondent violated the statute and committed unfair labor practices and that it unreasonably and unduly delayed the filing of a petition for election. See Cuneo v. United Shoe Workers of America, D.C., 181 F.Supp. 324.

The petitioner is entitled to the relief prayed for. Settle decree on notice.